**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA,

v.

DONNELL CREWS,
                Defendant.

---

Crim. Action No. 11-372-1 (EGS)

**MEMORANDUM OPINION**

I.    **Introduction**

Defendant Donnell Crews ("Mr. Crews" or "Defendant") was
convicted by a jury of attempted interference with commerce by
robbery. *See* Judgment, ECF No. 266 at 1.[1] He was sentenced to 225
months of imprisonment. *Id* at 2. Mr. Crews seeks to set aside or
correct his sentence, pursuant to 28 U.S.C. § 2255, making two
arguments in favor of setting aside his conviction or granting a
new trial. First, he argues ineffective assistance of counsel in
violation of his Sixth Amendment Rights. *See* Def.'s § 2255 Mot.
("Def.'s Mot."), ECF No. 301 at 5-9; Def.'s Suppl. Mot. to
Correct Sentence ("Def.'s Suppl. Mot."), ECF No. 304 at 3;
Def.'s Suppl. to Mot. for New Trial ("Def.'s Add'l Suppl.
Mot."), ECF No. 331 at 11, 19. Second, he argues that his

---

[1] When citing electronic filings throughout this Memorandum
Opinion, the Court cites to the ECF header page number, not the
original page number of the filed document.

sentence should be reconsidered based upon the Supreme Court's rulings in *Johnson v. United States*, 135 S. Ct. 2551, 2560 (2015), and *United States v. Davis*, 139 S. Ct. 2319 (2019). *See* Def.'s Add'l Suppl. Mot, ECF No. 331 at 26.

Pending before the Court are Mr. Crews's motion to compel discovery, and his 28 U.S.C. § 2255 motion for a new trial or for a correction in his sentence. Upon consideration of the motions, responses, and the replies thereto, the applicable law and regulations, the entire record and the materials cited therein, the Court **DENIES** the motion to compel, ECF No. 289; **DENIES** the § 2255 motion, ECF No. 301; **DENIES** the supplemental motion to correct sentence, ECF No. 304; and **DENIES** the supplement to motion for a new trial, ECF No. 331.

## II.  Factual and Procedural Background

### A. Attempted Hobbs Act Robbery

On September 21, 2011, three men attempted to rob Hugh Whitaker, an employee of a cash-in-transit company, while he exited a CVS with approximately $10,000 in cash. *United States v. Crews*, 856 F.3d 91, 92-93 (D.C. Cir. 2017). One of the men drew a handgun and demanded the cash Mr. Whitaker was carrying. *Id.* at 92. In response, Mr. Whitaker drew his own handgun and the two men exchanged gunfire. *Id.* Mr. Whitaker retreated into the CVS uninjured, and the three men–later identified as Mr. Crews, Kirk Dean, and Anthony James–fled the scene. *Id.*

The police stopped Mr. Crews and Mr. James a few blocks away, and a witness identified them as being two of the men who had confronted Whitaker. *Id.* at 92-94. Meanwhile, a fourth man, Antwon Crowder, who had driven the other three to the CVS, drove the injured Kirk Dean to a hospital. *Id.* at 93-94. Mr. Dean had sustained two gunshot wounds during the CVS gunfire exchange, but died from a separate gunshot wound, unrelated to the attempted robbery, that he sustained in transit from the CVS to the hospital. *Id.* at 94.

A grand jury charged Mr. Crews and Mr. Crowder with three counts by indictment on December 20, 2011, including: (1) Conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951 (also known as the Hobbs Act); (2) Attempted interference with commerce by robbery and aiding and abetting, in violation of 18 U.S.C. §§ 2 and 1951; and (3) Using, carrying, or possessing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). Indictment, ECF No. 12. The grand jury also charged Mr. Crews with a fourth count: Unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). *Id.* James, meanwhile, pled guilty and testified against Mr. Crews and Mr. Crowder. *Crews*, 856 F.3d at 92-93.

**B. First Trial**

Mr. Crews and Mr. Crowder were tried jointly, and the first trial concluded with a hung jury; on August 14, 2013, the Court

declared a mistrial. *Crews*, 856 F.3d at 93-94. Antwon Crowder's counsel subsequently filed a motion to withdraw, delaying the determination of a new trial date. *See* Mot. to Withdraw Appearance, ECF No. 154. While the Court stated its intention to give both defendants "the earliest possible trial date," it recognized that there were "about 2,500 pages of transcript" from the first trial which would take an estimated "60 days" for the Court to prepare, and that it would be "humanly impossible" for new counsel to get up to speed by the first available date in January. 09/03/2021 Tr., ECF No. 355-2 at 7-10. Concurring with the Court, Mr. Crews's counsel shared the extent of documents he had to go through despite being on the case "from day one" and expressed that he "could not do anything" before mid-January. *Id.* at 13-15.

After Mr. Crowder obtained new counsel, *see* Notice of Attorney Appearance – Defendant, ECF No. 160, on September 17, 2013; the Court set a trial date of January 28, 2014. *See* Status Conference Minute Entry, Sept. 17, 2013. Following a rescheduling on January 10, 2014, Mr. Crews's retrial began on February 10, 2014. *See* Minute Entry, Jan. 10, 2014. It appears that speedy-trial issues were not discussed on the record between the mistrial declared on August 14, 2013, and the retrial that began on February 10, 2014. *See generally* Docket for Crim. Action No. 11-372-1. Nor does it appear that Mr.

4

Crews's counsel explicitly waived his speedy-trial rights on the record. *See id.*

### C. Second Trial

The government retried both defendants, and on March 12, 2014, the jury found Mr. Crews guilty of attempted interference with commerce by robbery. Verdict Form (Crews), ECF No. 221 at 1. Mr. Crowder was found not guilty on two counts--conspiracy to interfere with commerce by robbery, and using, carrying, or possessing a firearm during a crime of violence. Verdict Form (Crowder), ECF No. 223 at 1. The jury was unable to reach a verdict on the remaining counts as to both defendants, and the Court declared a mistrial for those counts. Jury Deliberations Minute Entry, Mar. 18, 2014; Minute Order on Motion for Miscellaneous Relief, Mar. 18, 2014. After Mr. Crowder decided to enter a guilty plea, the government informed the Court that it planned to dismiss the remaining counts against Mr. Crews and requested a sentencing date. *See* Gov't's Mot. to Order Presentence Investigation Report and Schedule Sentencing Date, ECF No. 234 at 1.

The U.S. Probation Office determined that Mr. Crews was a career offender under § 4B1.1 of the Sentencing Guidelines, based on his conviction in this case, a 2003 robbery conviction in Maryland, and a 2005 carjacking conviction in Maryland. Presentence Investigation Report ("PSI Report"), ECF No. 252 at

6-11. Accordingly, the Probation Office calculated Mr. Crews's total offense level as 32, his criminal history category as VI, and his guidelines range as 210 to 240 months. ECF No. 253 at 1. At sentencing, on December 16, 2014, Mr. Crews's counsel asserted that "either one or both of the prior convictions are not qualifying offenses such that [Mr. Crews] would now be a career offend[er]." 12/16/14 Tr., ECF No. 315 at 7. The Court did not make a finding that defendant was or was not a career offender under the guidelines, and sentenced defendant to 225 months of imprisonment—within the career-offender guideline range—followed by a three-year term of supervised release. Judgment, ECF No. 266 at 1.

### D. Appeal to Court of Appeals for the District of Columbia Circuit

Mr. Crews, represented by new counsel, appealed, and challenged two of this Court's evidentiary rulings. *Crews*, 856 F.3d at 93. First, Mr. Crews alleged that the Court erred by denying his motion for a mistrial based on graphic testimony by an emergency room nurse about Mr. Dean's head wound, which was unrelated to the robbery. *Id.* at 93-94, 96. Second, Mr. Crews claimed that the Court improperly struck the testimony of his fiancée, Vakeema Ensley, his only defense witness, after she asserted her Fifth Amendment privilege during the government's cross-examination. *Id.* at 93. The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") rejected both

claims and affirmed Mr. Crews's conviction on May 9, 2017. *Id.*
at 101.

While Mr. Crews's appeal to the D.C. Circuit was pending,
the Supreme Court invalidated the "residual clause" of the Armed
Career Criminal Act ("ACCA") as unconstitutionally vague. *See*
*Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). Section
4B1.2 of the Sentencing Guidelines – defining a "crime of
violence" for purposes of determining whether a defendant is a
career offender under § 4B1.1 – included a residual clause that
was identical to that invalidated in *Johnson*, *id*. The Sentencing
Commission subsequently removed this clause from § 4B1.2's
crime-of-violence definition. *See* U.S.S.G. Suppl. App. C, amend.
798 (effective Aug. 1, 2016). However, in *Beckles v. United*
*States*, 137 S. Ct. 886, 892 (2017) the Supreme Court held that
the Sentencing Guidelines, by virtue of being advisory rather
than mandatory, are not subject to constitutional vagueness
challenges and that "[t]he residual clause in § 4B1.2(a)(2)
therefore is not void for vagueness."

### E. § 2255 Motion for New Trial

On May 6, 2018, Mr. Crews filed a motion under 28 U.S.C. §
2255, asserting five grounds for relief. *See* Def.'s Mot., ECF
No. 301 at 5. First, Mr. Crews contends that his trial counsel
was ineffective for failing to challenge his career-offender
classification in the PSI Report. *Id.* at 5. Second, he argues

that his trial counsel was ineffective for purportedly waiving
his speedy trial rights without his consent during the re-trial
proceedings. *Id.* at 6. Third, he asserts that his trial and
appellate counsel were both ineffective for failing to challenge
the sufficiency of evidence on his charge for using, carrying,
or possessing a firearm during a crime of violence - a charge
for which he was not convicted. *Id.* at 7-8; *see also* Verdict,
ECF No. 221 at 1. Fourth, Mr. Crews contends that his Attempted
Hobbs Act Robbery conviction is not a crime of violence
following the Tenth Circuit's decision in *United States v.
O'Connor*, 874 F.3d 1147 (10th Cir. 2017) and the Supreme Court's
decision in *Sessions v. Dimaya*, 138 S. Ct. 1204, 1210 (2018).[2]

---

[2] The government reads Mr. Crews's claim as challenging his
conviction (as opposed to its classification as a crime of
violence), and responds that *O'Connor's* holding, that Hobbs Act
robbery did not qualify as a crime of violence under the 2016
Sentencing Guidelines, *see* 874 F.3d at 1158, does not call into
question the validity of Mr. Crews's conviction since "[t]he
elements of attempted Hobbs Act robbery do not depend on any
definition of a crime of violence." Gov't's Opp'n, ECF No. 316
at 36. The Court however, construes Mr. Crews's claim regarding
*O'Connor* and *Dimaya* not as challenging the elements of his
conviction, but rather as asserting that his conviction in this
case is "not a crime of violence after these rulings." Def.'s
Mot., ECF No. 301 at 8. Since the underlying logic of these
cases is distinct from each other, the Court considers them
separately. *Compare O'Connor*, 874 F. 3d at 1158 (holding that
Hobbs Act robbery did not qualify as a crime of violence under
the 2016 Sentencing Guidelines), *with Dimaya*, 138 S. Ct. at 1210
(invalidating the residual clause in the Immigration and
Nationality Act ("INA"), 18 U.S.C. § 16(b)). The Court considers
whether Hobbs Act robbery is a crime of violence within its
analysis of whether Mr. Crews's counsel was ineffective for not

*Id.* at 9. Finally, he disputes the government's ostensible broadening of his indictment during trial, and his counsel's failure to object to the prosecution's aiding-and-abetting theory. *Id.* at 11.

On July 25, 2018, Mr. Crews filed a supplement to his § 2255 motion, recognizing that his vagueness challenge to the career offender guidelines (his fourth ground in his original § 2255 motion) "must fail" following the Supreme Court's decision in *Beckles*. Def.'s Suppl. Mot., ECF No. 304 at 1 (referencing *Beckles*, 137 S. Ct. at 886). Instead, Mr. Crews asserted a new claim of ineffective assistance of appellate counsel for failing to challenge his career-offender designation on appeal pursuant to *Descamps v. United States*, 570 U.S. 254, 260, 133 S. Ct. 2276 (2013).[3] *See* Def.'s Suppl. Mot., ECF No. 304 at 4.

---

challenging his career offender classification. *See infra*, Section IV(B)(1)(b)(i)(I). The Court considers Mr. Crews's claim regarding *Dimaya* alongside his claim in his latest filing that his sentence should be reconsidered following *Johnson*, 135 S. Ct. at 2551 (invalidating the residual clause in ACCA), and *Davis*, 135 S. Ct. at 2551 (invalidating residual clause in 18 U.S.C. § 924(c)(3)(B)). *See* Def.'s Add'l Suppl. Mot., ECF No. 331 at 26; *see also infra* Section IV(B)(2).

[3] The Court treats this claim as a replacement of Mr. Crews' first ground in his earlier claim that his trial counsel was ineffective for failing to challenge his career-offender classification in the PSI Report. The record establishes that trial counsel specifically preserved an objection to the career offender classification for appeal, arguing "that either one or both of the prior convictions are not qualifying offenses such

On November 19, 2018, the government filed its opposition
to Mr. Crews's *pro se* motion and supplemental motion under 28
U.S.C. § 2255. *See* United States' Opp'n to Def.'s Mot. and
Suppl. ("Gov't's Opp'n"), ECF No. 316. On November 26, 2018, Mr.
Crews submitted a request to reopen a Motion to Compel Discovery
and for an Updated Status Report Concerning the reliability of
the Department of Forensic Services DNA Analysis Purportedly
Showing the Presence of Defendant's DNA. ("Def.'s Mot. to
Compel"), ECF No. 289. In a Minute Order issued August 24, 2016,
the Court  denied the original motion without prejudice since
Mr. Crews's appeal before the D.C. Circuit was pending. Minute
Order on Motion to Compel, Aug. 24, 2016.  Upon receiving Mr.
Crews's request to reopen discovery, the Court ordered the
government to respond to the discovery motion. Minute Order,
Dec. 3, 2018. On January 4, 2019, the government filed its
opposition to Mr. Crews's reopened discovery motion. *See* Mem. in
Opp'n ("Gov't's Opp'n Mot. to Compel"), ECF No. 319.

On December 15, 2018, Mr. Crews also filed a Motion to
Appoint Counsel, ECF No. 318; which the Court granted. Minute
Order, Jan. 2, 2019. On July 28, 2019, Mr. Crews's counsel filed
a supplemental brief in further support of his § 2255 claims and

---

that he would now be a career offend[er]." 12/16/14 Tr., ECF No.
315 at 7.

his discovery motion. *See* Def.'s Add'l Suppl., ECF No. 331. Mr.
Crews's second supplement includes two new ineffective
assistance of trial counsel claims: (1) that trial counsel was
ineffective for failing to request that the Court narrow its
ruling striking the entire testimony of Ms. Ensley; and (2) that
trial counsel was ineffective for not retaining experts in the
fields of DNA testing and DNA interpretation. *Id.* at 11, 19. Mr.
Crews also asks the Court to compel the government to respond to
his reopened discovery motion. *Id.* at 23. Finally, he contends
that the Court should reconsider the sentence it imposed in this
case based upon the Supreme Court's decisions in *Johnson v.
United States*, 135 S. Ct. 2551 (2015), and *United States v.
Davis*, 139 S. Ct. 2319 (2019). *Id.* at 26.[4]

The government responded to Mr. Crews's latest supplemental
brief on December 5, 2019. *See* United States' Opp'n to Def.'s
Suppl. to Mot. for New Trial ("Gov't's Suppl. Opp'n"), ECF No.
338. The defendant replied on December 16, 2019. *See* Def.'s
Reply, ECF No. 340. The two motions are ripe and ready for the
Court's adjudication.

---

[4] This argument is related to Mr. Crews's prior assertion
that his Hobbs Act conviction is invalid in view of the Supreme
Court's decision in *Dimaya*, 138 S. Ct. at 1210. *See* Def.'s Mot.,
ECF No. 301 at 8. The Court therefore considers these two claims
together.

### III. Standard of Review

#### A. Motion to Compel Discovery

The Due Process Clause of the Constitution requires the
United States to disclose to the defendant any evidence that "is
material either to guilt or to punishment, irrespective of the
good faith or bad faith of the prosecution." *Brady v. Maryland*,
373 U.S. 83, 87, 83 S. Ct. 1194 (1963). "[F]avorable evidence is
material, and constitutional error results from its suppression
by the government." *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.
Ct. 1555 (1995) (internal citations omitted). The constitutional
requirement includes "exculpatory evidence never requested, or
requested in a general way." *Kyles*, 514 U.S. at 433 (internal
quotation marks omitted). The prosecution must also disclose to
the defense evidence that is useful in impeaching government
witnesses, even if it is not inherently exculpatory. *Giglio v.
United States,* 405 U.S. 150, 153, 92 S. Ct. 763 (1972).

"The prosecutor is not required to deliver his entire file
to defense counsel, but only to disclose evidence favorable to
the accused that, if suppressed, would deprive the defendant of
a fair trial." *United States v. Bagley*, 473 U.S. 667, 675, 105
S. Ct. 3375, 3380 (1985). Since the good faith or bad faith of
the government is irrelevant, *Brady*, 373 U.S. at 87; "a
prosecutor anxious about tacking too close to the wind will
disclose a favorable piece of evidence." *Kyles*, 514 U.S. at 439.

### B. Motion for a New Trial

Under 28 U.S.C. § 2255, a defendant may move the sentencing court to vacate, set aside, or correct a sentence if the defendant believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The relief envisaged by § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S. Ct. 2235 (1979). "Because of the premium placed on the finality of judgments, there are limited circumstances under which a court should grant a Section 2255 motion." *Bedewi v. United States*, 583 F. Supp. 2d 72, 76 (D.D.C. 2008) (internal quotation marks omitted).

A defendant bears the burden of demonstrating that he is entitled to relief under § 2255. *See, e.g.*, *United States v. Bell*, 65 F. Supp. 3d 229, 231 (D.D.C. 2014). To obtain collateral relief under § 2255, it is "well-settled" that "a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166, 102 S. Ct. 1584 (1982); *see also United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) ("[I]n a § 2255 collateral challenge, [a defendant], in order to gain relief under any

13

claim, is obliged to show a good deal more than would be sufficient on a direct appeal from his sentence."). "Society's interest in bringing criminal appeals to an end is the reason for the high standard for relief in a collateral proceeding." *Pollard*, 959 F.2d at 1029.

For claims other than ineffective assistance of counsel, a defendant's failure to raise an available claim on direct appeal bars him from raising the claim in a subsequent collateral attack, unless he shows cause for his prior failure to raise the claim and prejudice because of it. *See Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604 (1998); *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003); *Brodie v. United States*, 626 F. Supp. 2d 120, 123 (D.D.C. 2009). To show cause, a defendant must establish "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim," such as government interference or that the factual or legal basis for the claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-94, 111 S. Ct. 1454 (1991) (internal quotation marks omitted). In addition, the defendant must show "'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 168.

### 1. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S.

668, 104 S. Ct. 2052 (1984)). To succeed on an ineffective-assistance claim, a defendant must show both deficient performance by his attorney and prejudice. *Strickland*, 466 U.S. at 687. *Strickland* requires a party claiming ineffective assistance of trial counsel to show :(1) that "counsel's representation fell below an objective standard of reasonableness ... [measured] under prevailing professional norms," (the performance prong); and (2) that the "deficiencies in counsel's performance...[were] prejudicial to the defense" (the prejudice prong). *Id.* at 668, 687-88, 692. To establish deficient performance, the moving party must show "specific errors by trial counsel." *United States v. Cronic*, 466 U.S. 648, 666, 104 S. Ct. 2039 (1984). To establish prejudice, the moving party must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Judicial scrutiny of counsel's performance must be highly deferential," and defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The standard for evaluating claims of ineffective assistance of appellate counsel is the same as that for evaluating claims of ineffective assistance of trial counsel. *See Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746 (2000);

*United States v. Agramonte*, 366 F. Supp. 2d 83, 86 (D.D.C. 2005). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 288; *see also* Agramonte, 366 F. Supp. 2d at 86 ("It is settled that a criminal defendant has no constitutional right to have appellate counsel raise every nonfrivolous issue that the defendant requests."). Although it is "possible" to bring a Strickland claim "based on counsel's failure to raise a particular claim" on appeal, "it is difficult to demonstrate that counsel was incompetent" on that ground. *Robbins*, 528 U.S. at 288.

### a. Timeliness of Ineffective Assistance of Counsel Claims

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) statute of limitations applies to the filing of § 2255 claims. *Holland v. Fla.*, 560 U.S. 631, 130 S. Ct. 2549, 2552 (2010). Absent a narrow set of circumstances, a defendant must file a § 2255 motion within one year of the date on which his conviction becomes final.[5] *See Dodd v. United States*, 545 U.S.

---

[5] The one-year limitation period runs from the latest of:
    (1)  the date on which the judgment of conviction becomes final;
    (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

353, 357, 125 S. Ct 2478 (2005) (recognizing that "[i]n most cases, the operative date from which the limitation period is measured will be . . . the date on which the judgment of conviction becomes final."). That date is measured by "the conclusion of direct review or the expiration of the time for seeking such review." *United States v. Shelton*, 539 F. Supp. 2d 259, 266-67 (D.D.C. 2008).

Claims filed beyond the one-year limitation are timely if they relate back to the timely claims, meaning that they "arise from the same core facts as the timely filed claims, and not [if] the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Mayle v. Felix*, 545 U.S. 644, 645, 125 S. Ct. 2562(2005) (internal quotation marks omitted). The Federal Rules of Civil Procedure establish that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or

---

(3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

occurrence set forth or attempted to be set forth in the original pleading . . ..” Fed. R. Civ. P. 15(c)(2).

However, in certain cases, the AEDPA statute of limitations is subject to equitable tolling. *Holland*, 560 U.S. at 649. To warrant equitable tolling, a petitioner must show: “(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way” and prevented timely filing. *Id.*

### b. Career Offender Guideline

Section 994(h) of Title 28, United States Code, mandates that the Sentencing Commission assure that certain “career” offenders receive a sentence of imprisonment “at or near the maximum term authorized.” U.S.S.G. § 4B1.1(a) Background. Section 4B1.1 implements this directive. *Id.* The Commission has modified the definition of “career” offender to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate and to avoid “unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct . . . .” *Id.* (citing 28 U.S.C. § 991(b)(1)(B)); *see also* S. Rep. No. 225, 98th Cong., 1st Sess. 175 (1983) (“[T]he guidelines development process can assure consistent and rational implementation for the Committee’s view that

substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers.").

At the time of Mr. Crews's sentencing, the Guidelines classified a defendant as a career offender if: (1) he was at least eighteen years old when he committed the offense for which he was being sentenced; (2) that offense was a felony that was either a crime of violence or a controlled-substance offense; and (3) he had at least two prior felony convictions of either a crime of violence or a controlled-substance offense. U.S.S.G. § 4B1.1(a) (2014). A "crime of violence" was defined as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(a).

Subsection (a)(1) is generally referred to as the "elements" clause or alternately as the "force" clause; the non-italicized portion of subsection (2) is the "enumerated offense" clause; and the italicized text is the "residual" clause. *See United States v. Carr*, 314 F. Supp. 3d 272, 274 n.1 (D.D.C. 2018).

### c. Determination of a Crime of Violence

Courts use a "categorical approach" to assess whether an offense is a "crime of violence," focusing on "how the law defines the offense" and not on how "an individual offender might have committed it on a particular occasion."[6] *United States v. Haight*, 892 F.3d 1271, 1279 (D.C. Cir. 2018) (quoting *Begay v. United States*, 553 U.S. 137, 141 128 S. Ct. 1581 (2008)). If the statute on which the conviction was based

---

[6] In cases where the statute of conviction sets out different versions of the offense, one of which satisfies the definition of a crime of violence, the statute is considered textually divisible, and courts use a "modified categorical approach" to ascertain whether the defendant was convicted of the eligible "crime of violence" form of the offense. *Mathis v. United States*, 136 S. Ct. 2243, 2248-50 (2016) (internal citations omitted); *Taylor* v. *United States*, 495 U. S. 575, 602 (1990)(stating that a statute is divisible if it defines alternate "elements," not merely alternative "means" of committing the offense) (internal quotation marks omitted). Under the modified categorical approach, the court considers a subsection of conviction documents (such as the charging document and jury verdict or guilty plea) to evaluate whether the jury necessarily found, or the defendant necessarily admitted, elements of a qualifying offense. *Shepard v. United States*, 544 U.S. 13, 16,125 S. Ct. 1254(2005). If the statute is broader than the generic offense and does not include an alternate element corresponding with the definition of a crime of violence, the sentencing court may not use the modified categorical approach. *Descamps*, 570 U.S. at 263-65.

defines the offense in a way that includes, at its margins, conduct beyond what the guidelines contemplate as a crime of violence, the offense is not categorically a crime of violence. *See Haight*, 892 F.3d at 1279. In other words, the question is whether "the least of th[e] acts criminalized ... are encompassed by the generic federal offense." *United States v. Carr*, 946 F.3d 598, 601 (D.C. Cir. 2020) (citing *Moncrieffe v. Holder*, 569 U.S. 184, 191, 133 S. Ct. 1678 (2013)) (internal quotation marks omitted).

The elements clause defines a "crime of violence" as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). When analyzing whether an offense is a crime of violence under the elements clause, the Court looks "only to the elements of the crime to determine whether, by its terms, commission of the crime inherently (i.e., categorically) requires the kind of force" that is contemplated in § 4B1.2(a). *United States v. Brown*, 892 F.3d 385, 402 (D.C. Cir. 2018). The question is whether the "physical force" that is used, attempted, or threatened to commit the offense is "violent force – that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140, 130 S. Ct. 1265 (2010). The meaning of "physical force" in [§ 4B1.2(a)] is a question of federal law, not state

21

law." *United States v. Wilson*, 249 F. Supp. 3d 305, 317-18
(D.D.C. 2017) (citing *Johnson*, 559 U.S. at 140).

The enumerated offense clause elucidates a "crime of
violence" as an offense that "is burglary of a dwelling, arson,
or extortion, involves use of explosives. . . ." U.S.S.G. §
4B1.2(a)(2). The inquiry under the enumerated offense clause
compares the elements of the defendant's crime of conviction—
here, Hobbs Act robbery, Maryland robbery, and Maryland
carjacking—with the elements of any potentially applicable §
4B1.2(a)(2) enumerated offenses—here, robbery and extortion—to
see if they match. *See Mathis v. United States*, 136 S. Ct. 2243,
2248-49 604 (2016). However, if the Guidelines do not supply a
definition of the enumerated offense, as in the case of robbery
(at the time of Mr. Crews's conviction), the Court determines
the generic definition by considering "a wide range of sources .
. . including federal and state statutes, the Model Penal Code,
dictionaries, and treatises." *O'Connor*, 874 F.3d at 1151
(quoting *United States v. Rivera-Oros*, 590 F.3d 1123, 1126-27
(10th Cir. 2009)). If the scope of conduct covered by the
defendant's crime of conviction is broader than what the
enumerated offense definition would cover, the "crime of
violence" sentencing enhancement is not valid under the
enumerated offense clause. *See United States v. Titties*, 852
F.3d 1257, 1265-66 (10th Cir. 2017).

The residual clause demarcates a "crime of violence" as an offense that ". . . otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). When determining whether a prior conviction falls within the residual clause, our inquiry remains a categorical one, "consider[ing] whether the offense's elements are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *James v. United States,* 550 U.S. 192, 202, 127 S. Ct. 1586 (2007).

## IV.  Analysis

### A. Mr. Crews's Motion to Compel Discovery is Moot

Mr. Crews's motion to compel discovery and for an updated status report concerns: (1) police data management evidence; and (2) the reliability of the DNA evidence against him. *See* Mot. to Compel, ECF No. 289 at 2-4. Regarding the first issue, Mr. Crews seeks further discovery following AUSA David Kent's March 27, 2015, status report filing stating that he had reviewed the I/Leads fields that had not populated the previously generated police reports and would compare this I/Leads information with the information in the USAO file.[7] *Id.* at 3.

---

[7] I/Leads is a data management system that was used by the Metropolitan Police Department between 2011 and 2015. *See* Mot. to Compel, ECF No. 289 at 1.

Mr. Crews's second discovery request arises from the significance of DNA evidence (on a jacket found in a recycling bin and a latex glove found next to the getaway car), in linking him to the attempted robbery, and the incidence of errors, identified in 2015, in the DNA analysis conducted at the Department of Forensic Sciences ("DFS") laboratory. *See* Def.'s Add'l Suppl. Mot., ECF No. 331 at 24. These errors led to a United States Attorney's Office for the District of Columbia-retained panel finding that DFS' practices are inappropriate and outside the range of what is generally acceptable within the field. *See* AR, ECF No. 289-5 at 6; Def.'s Mot. to Compel, ECF No. 289 at 4. Jessica Skillman, who provided critical DNA testimony against Mr. Crews, was a DFS employee. *Id.* Consequently, Mr. Crews seeks discovery concerning the reliability of the incriminating DNA evidence used against him by the government, asserting that "the reliability of the DNA evidence and its analysis directly affected the jury's verdict on the attempted interference of commerce by robbery charge." Mot. to Compel, ECF No. 289 at 12.[8]

---

[8] Co-defendant Crowder, who had no similar DNA evidence presented against him, was not convicted of aiding and abetting the attempted armed robbery. Verdict (Crowder), ECF No. 223 at 1.

The government contends that in response to Mr. Crews's first discovery request, government counsel reached out to AUSA Kent, who stated that after filing the status report in 2015, he had compared the I/Leads information and data that was not in the disclosed police reports to the discovery that had been provided, and consequently determined that everything in I/Leads had been produced to defense counsel. *See* Gov't's Opp'n Mot. to Compel, ECF No. 319 at 1-2. The Court therefore finds this issue to be moot, since the information in I/Leads has already been provided to defense counsel, and the government has satisfied its *Brady* requirement.

In response to Mr. Crews's second discovery request on the reliability of DNA evidence, the government maintains that Mr. Crews's case was not impacted by the issues at the DFS laboratory. *See id.* at 2. First, the government highlights that the testing in this case was conducted not by DFS, but instead by the Metropolitan Police Department ("MPD") crime lab and Bode technology for the jacket and latex glove respectively. *See id.* at 2-3.[9] Second, the government emphasizes the fact that MPD's

---

[9] The testing on the jacket found in a recycling bin with a blood stain matching Mr. Crews's blood was performed by the MPD crime laboratory between November 2011 and June 2012. *See* Gov't's Opp'n Mot. to Compel, ECF No. 319 at 2. It was not until October 2012 that the MPD lab was taken over by DFS and new management, and the faulty mixture protocol was implemented for the first time. *Id.* The DNA analysis of the latex glove matching Mr. Crews's DNA profile was performed by Bode Technology, a

testing on the jacket with a blood stain matching Mr. Crews's
profile was based on a single source as opposed to a mixture.
*See id.* Finally, the government states categorically that "the
MPD laboratory did not do statistical mixture interpretation" at
the time the analysis in this case was performed, which was why
the latex glove that called for a mixture statistic was sent to
a different laboratory.[10] *Id.* The government therefore asserts
that DFS' mixture interpretation errors following its takeover
of the MPD crime lab are irrelevant even if the mixture protocol
had been in place at the time the DNA analysis was performed.
*Id.* Mr. Crews challenges the DNA evidence in his second
supplemental filing, *see* Def.'s Add'l Suppl. Mot., ECF No. 331
at 23; however, his reply does not raise any counterarguments to
the points made by the government in its opposition to the
motion to compel. *See generally* Def.'s Reply, ECF No. 340.

The relevant legal standard holds that the prosecution must
provide the defendant with any evidence that "is material either

_____

laboratory independent of both the MPD and the DFS. *See* AR,
Exhibit 3, ECF No. 319-3 at 2.

[10] "Mixture interpretation" involves the application of
statistics, specifically the combined probability of inclusion
(CPI), to interpret DNA mixtures, and is distinct from
identifying a major contributor to or excluding an individual
from a mixture without providing statistical calculations. *See*
Gov't's Opp'n Mot. to Compel, ECF No. 319 at 2, n.1.

to guilt or to punishment." *Brady*, 373 U.S. at 87. Undisclosed evidence is material if there is a "reasonable probability" that the result of the trial would have been different, not just a reasonable possibility. *Strickler v. Greene*, 527 U.S. 263, 291, 119 S. Ct. 1936, 1953 (1999). Additionally, the prosecution has a duty to disclose evidence that is useful in impeaching government witnesses. *Giglio,* 405 U.S. at 153. The test of materiality for the failure to disclose *Giglio* impeachment material showing the witness was not truthful is whether there is any reasonable likelihood that false testimony could have affected the judgment of the jury. *Id.*

As a threshold matter, any DNA reliability concerns are limited to the DNA evidence from the jacket, since the latex glove was tested by Bode Technology, a lab independent of the MPD and DFS. *See* Exhibit 3, ECF No. 319-3 at 2. Mr. Crews does not allege any problems with the testing procedures employed at Bode.

As for the jacket, the Court is satisfied that the DNA errors at DFS are not "material" to the case under *Brady,* 373 U.S. at 87; nor is there a sufficient "prospect" that they contain "exculpatory materials." *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992). The record establishes that the mixture interpretation protocol that led to the errors, and DFS itself, was not associated with the MPD until months after

27

the testing in this case was complete. Gov't's Opp'n Mot. to Compel, ECF No. 319 at 2. Moreover, the source of the DNA interpretation errors at DFS, and the focus of the review panel retained by the USAO, was DNA *mixtures*, not single sources as in the case of the jacket. AR, ECF No. 289-5 at 2.

For the aforementioned reasons, the Court also concludes that further disclosure is immaterial for impeachment purposes under *Giglio*, 405 U.S. at 153. "[I]t is only those new avenues of impeachment that sufficiently undermine confidence in the verdict that will make out a successful *Brady* claim," *U.S. v. Walker*, 657 F.3d 160, 188 (3d Cir. 2011), *cert. denied*, 566 U.S. 1170, 132 S. Ct. 1122 (2012); the mixture interpretation errors at DFS do not suffice.

### B. Mr. Crews's § 2255 Motion to Vacate, Set Aside, or Correct a Sentence Is Meritless

Mr. Crews raises two issues in his § 2255 Motion for a New Trial. First, Mr. Crews argues that he was denied effective assistance of counsel on several grounds. *See* Def.'s Mot., ECF No. 301 at 5-9; Def.'s Suppl. Mot., ECF No. 304 at 3; Def.'s Add'l Suppl. Mot., ECF No. 331 at 11, 19. Second, Mr. Crews asks the Court to reconsider his sentence based upon the Supreme Court's decisions in *Johnson*, 135 S. Ct. at 2560, *Dimaya*, 138 S. Ct. at 1210, and *Davis*, 139 S. Ct. at 2319, and the alleged unconstitutionality of the residual clause in the career-

offender guidelines. *See* Def.'s Mot., ECF No. 301 at 8; Def.'s
Add'l Suppl. Mot, ECF No. 331 at 26. The Court addresses each of
these arguments in turn.

### 1. Mr. Crews Did Not Receive Ineffective Assistance of Counsel

Mr. Crews contends that he received ineffective assistance
of counsel across both his trial and his appeal. In his *pro se*
filings, Crews contends that: (1) his appellate counsel were
ineffective for failing to challenge his career-offender
classification; (2) his trial counsel was ineffective for
allegedly waiving his speedy trial rights without his consent;
(3) his trial and appellate counsel were both ineffective for
failing to challenge the sufficiency of evidence on his charge
for using, carrying, or possessing a firearm; and (4) his trial
counsel was ineffective for failing to challenge the
government's alleged broadening of his indictment during trial.
*See* Def.'s Mot., ECF No. 301 at 5-11; Def.'s Suppl. Mot., ECF
No. 304 at 1.

In the supplementary brief filed by Court-appointed counsel
on July 28, 2019, Mr. Crews raises two additional arguments: (5)
trial counsel was ineffective for failing to request that the
Court narrow its ruling striking the entire testimony of Ms.
Ensley; and (6) trial counsel was ineffective for not retaining
experts in the fields of DNA testing and interpretation. *See*
Def.'s Add'l Suppl. Mot., ECF No. 331 at 11, 19. The government

contends that these last two claims are barred as untimely because they do not relate back to Mr. Crews's timely § 2255 Motion. *See* Gov't's Suppl. Opp'n, ECF No. 338 at 11.

Before addressing the merits of Mr. Crews's newly-asserted ineffective assistance of counsel claims, the Court must first determine whether those claims are timely. *United States v. Cicero*, 214 F.3d 199, 202 (D.C. Cir. 2000). Thus, the Court considers the timeliness of the claims regarding ineffective assistance of counsel before moving to a discussion on the merits.

> **a. The Claims Filed by Mr. Crews in His Latest Supplemental Filing Do Not Relate Back to His § 2255 Motion and Are Barred as Untimely**

Mr. Crews's judgment became final on August 7, 2017, when the deadline expired for him to file a petition for a writ of certiorari seeking further review of the D.C. Circuit's ruling on his direct appeal (issued May 9, 2017), *see* D.C. Cir. Docket # 14-3089;[11] his deadline to file for § 2255 relief expired one year later, on August 7, 2018. *See Mayle*, 545 U.S. at 654. Since Mr. Crews's original *pro se* motion and his first supplemental motion were filed before the one-year limitation date, on May 1,

_____

[11] Absent a petition for a writ of certiorari, the judgment becomes final under § 2255(f) when the 90-day period for seeking certiorari expires). *See United States v. Hicks*, 283 F.3d 387, 388 (D.C. Cir. 2002).

2018, and July 25, 2018, respectively, it is undisputed that they were timely. *See* Gov't''s Suppl. Opp'n, ECF No. 338 at 11. However, for Mr. Crews's two latest claims to be timely, they must relate back to the claims in his timely filed § 2255 motion. *See Hicks*, 283 F.3d at 388 (establishing that a defendant may amend a timely filed § 2255 motion after the expiration of the limitation period only if the amended claim "relates back" to a timely claim).

The government argues that Mr. Crews's latest supplemental brief, filed on July 28, 2019, is untimely and contains "two brand-new ineffective assistance of counsel claims" that are "plainly separate and distinct from his timely claims." Gov't's Suppl. Opp'n, ECF No. 338 at 10. The government asserts that the new claims "do not share the same core facts with defendant's timely claims," and that they "do not escape the § 2255 time bar merely because they are based on the same legal theory as his earlier timely claims." *Id.* at 11.[12]

Mr. Crews replies that he raised the issue regarding Ms. Ensley in the timely original filing on May 6, 2018. *See* Def.'s

---

[12] The government adds that Crews cannot assert that "any of the other statutory provisions set forth in paragraphs (2) through (4) of § 2255(f), apply in this case to preserve the timeliness of his new ineffective assistance of counsel claims." *See* Gov't's Suppl. Opp'n, ECF No. 338 at 11. Since Mr. Crews's filings do not contradict this or suggest otherwise, the Court does not consider this issue.

Reply, ECF No. 340 at 4; *see also* Def.'s Mot., ECF No. 301 at 2. For his second additional claim, Mr. Crews states that trial counsel's failure to bring in an expert on DNA testing "relates back to the timely filing because it is predicated upon a subset of facts within the larger transaction of the trial proceedings." *See* Def.'s Reply, ECF No. 340 at 5. Finally, for both additional claims, even if the claims are not found to relate back, Mr. Crews reasons that the rebuttable presumption in favor of equitable tolling should apply. *Id.* at 1-2.

The Court is unpersuaded by Mr. Crews's arguments as to the timeliness of the claims. Contrary to Mr. Crews's assertion, the issue regarding Ms. Ensley was not preserved in the timely *pro se* filing. Mr. Crews points to part 9(f) of the filing, which states under the subheading "Grounds Raised":

> A. The District Court applied the wrong legal standard when striking Ensley entire testimony. (1) Under the Cardillo standard a Court may not strike a witness (sic) entire testimony when the witness refuses to answer questions or address collateral issues. (2) The District Court failed to apply the Cardillo[sic]standard and failed to consider whether the questions Ensley refused to answer were collateral in nature.
>
> B. Had the District Court applied the correct legal standard Ensley entire testimony would not have been striken (sic).
>
> C. There were at least three alternative remedies available to the District Court that

> would not have violated (?) constitutional
> rights.

Def.'s Mot., ECF No. 301 at 3.

However, this text refers to Mr. Crews's grounds for his appeal to the D.C. Circuit, not to the basis for his § 2255 motion, as evidenced by the question in the text's heading, which asks, "[i]f you did appeal, answer the following," and includes the subheading "Grounds Raised." *Id.* The problem is not that the issue was not "artfully drafted," Def.'s Reply, ECF No. 340 at 4; rather, it is that Mr. Crews does not mention Ms. Ensley's testimony anywhere under the five grounds for his § 2255 motion. *See generally* Def.'s Mot., ECF No. 301. Even acknowledging Mr. Crews's point that *pro se* filings are to be "liberally construed," Def.'s Reply, ECF No. 340 at 2 (quoting *Erickson v. Pardus*, 127 S. Ct. 2197, 2200, 127 S. Ct. 2197 (2007)); the issue of Ms. Ensley's testimony was not raised in his original § 2255 motion. Mr. Crews asserts no other basis on which the claim could relate back.

The Court is also not convinced by Mr. Crews's argument that his counsel's alleged failure to bring in DNA experts relates back to his timely filings. *See* Def.'s Reply, ECF No. 340 at 4. Other than the fact that counsel's purported failure to bring in an expert also happened during the trial, Mr. Crews does not state how there is a "common core of operative facts"

tying the new claim to the older ones, specifically that: (i) appellate counsel failed to challenge his sentencing as a career offender; (ii) trial counsel waived his speedy trial rights without his consent; (iii) trial and appellate counsel failed to challenge the sufficiency of evidence on his charge for using, carrying, or possessing a firearm during a crime of violence; and (iv)  trial counsel failed to object to the alleged broadening of his indictment at trial. Def.'s Reply, ECF No. 340 at 5 (quoting *Mayle*, 545 U.S. at 664); *see also* Def.'s Mot., ECF No. 301 at 5-11.

Mr. Crews's argument essentially amounts to an assertion that a common legal theory is enough to bring in his new claim; he states that "the common core legal *arguments* that are tied together are the Sixth Amendment [ineffective assistance of counsel] claims." Def.'s Reply, ECF No. 340 at 5 (emphasis added). But the standard for relation back is not whether the core legal *arguments* are tied together; rather, the standard, as Mr. Crews admits, is that "the original and amended petitions state claims that are tied to a common core of operative *facts*." *Id.* (citing *Mayle*, 545 U.S. at 664) (emphasis added).

Since neither of the two claims relate back to the original filings, the Court turns to the question of whether equitable tolling is warranted. Mr. Crews emphasizes the Supreme Court's ruling in *Holland*, that "[c]ourts must often exercise their

equity powers… on a case-by-case basis, demonstrating flexibility and avoiding mechanical rules, in order to relieve hardships… aris[ing] from a hard and fast adherence to more absolute legal rules." 560 U.S. at 631 (internal citations and quotation marks omitted). The hardships Mr. Crews points to include his proceeding *pro se* [in the initial filings], and his confinement at the Bureau of Prisons ("BOP") facility in Florence, Colorado, during the relevant period for his § 2255 motion. *See* Def.'s Reply, ECF No. 340 at 2.

The record establishes Mr. Crews's diligence in timely filing his original motion, amending it, and later seeking court-appointed counsel. *See generally* Def.'s Mot., ECF No. 301; Def.'s Supp Mot., ECF No. 304; Mot. to Appoint Counsel, ECF No. 318. However, regarding the claims in his second supplement, the Court concludes that Mr. Crews has not demonstrated that "extraordinary circumstances beyond [his] control [made] it impossible to file a petition on time." *Pollard*, 416 F.3d at 56 (internal citations and quotation marks omitted). The hardships Mr. Crews references do not meet the bar for "extraordinary circumstances," *Holland*, 560 U.S. at 631, that prevented a timely filing.

Courts in other Circuits have explicitly rejected the idea that proceeding *pro se* warrants equitable tolling. *See United States v. Flores,* 981 F.2d 231, 236 (5th Cir.1993) (holding that

pro se status, illiteracy, deafness, and lack of legal training are not external factors excusing abuse of the writ); *Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006) (stating that "[i]t is clear that pro se status, on its own, is not enough to warrant equitable tolling"); *Johnson v. United States,* 544 U.S. 295, 311, 125 S. Ct. 1571 (2005) (holding that "we have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"). *Cf. Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) (finding that "proceeding pro se is not a "rare and exceptional" circumstance because it is typical of those bringing a § 2254 claim.") The Court similarly finds no "extraordinary circumstances beyond [Crews'] control" in proceeding pro se from within a BOP facility. *Pollard*, 416 F.3d at 56.

The Court turns next to the merits of the timely claims raised by Mr. Crews.

### b. **Mr. Crews Has Not Shown Ineffective Assistance of Counsel for His Timely § 2255 Claims**

Mr. Crews advances a series of arguments for ineffective assistance of counsel in his timely § 2255 filings. Of these, the court discusses two below: (1) that appellate counsel was ineffective in failing to challenge defendant's career-offender

designation;[13] and (2) that trial counsel was ineffective in
waiving defendant's speedy trial rights without his consent. *See
infra*, Section IV(B)(1)(b)(i) and (ii). The Court finds it
unnecessary to address Mr. Crews's remaining arguments: (1) that
trial and appellate counsel were ineffective for failing to
challenge Count 4, which charged using, carrying, or possessing
a firearm during a crime of violence; and (2) that the
prosecutor committed misconduct by proceeding on an aiding-and-
abetting theory at trial where the indictment did not charge
aiding and abetting, and relatedly, that his trial counsel was
ineffective for failing to object to the prosecution's aiding-
and-abetting theory. *See* Def.'s Mot., ECF No. 301 at 6, 10
(Grounds Three and Five).

The Court concludes that since Mr. Crews was not convicted
on Count 4, *see* Verdict (Crews), ECF No. 221 at 1; even if there
were deficiencies in counsel's performance, they were clearly
not "prejudicial to the defense." *Strickland*, 466 U.S. at 687-

---

[13] Trial counsel specifically preserved an objection to the
classification for appeal, arguing "that either one or both of
the prior convictions are not qualifying offenses such that he
would now be a career offend[er]." 12/16/14 Tr., ECF No. 315 at
7.

88, 692. The argument raised by Mr. Crews for failure to challenge Count 4 must therefore fail.[14]

The Court also dismisses Mr. Crews's argument that trial counsel was ineffective for failing to object to the prosecution's aiding-and-abetting theory. *See* Def.'s Mot., ECF No. 301 at 10. Contrary to Mr. Crews's assertion, the indictment specifically charged aiding and abetting, listing Count Two as "Attempted Interference with Interstate Commerce by Robbery and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1951 and 2." Indictment, ECF No. 12 at 3-4. Mr. Crews's claim therefore lacks merit.[15]

### i. Appellate Counsel Was Not Ineffective for Failing to Challenge Mr. Crews's Sentencing as a Career Offender

---

[14] Mr. Crews also brings up Count 4 in the fourth ground in his filing, alleging that using, carrying, or possessing a firearm in violation of 18 U.S.C. § 924(c) is no longer a crime of violence given the rulings in *Sessions v. Dimaya* and *United States v. O'Connor*. *See* Def.'s Mot., ECF No. 301 at 8. The Court does not address this argument since Mr. Crews was not convicted on Count 4.

[15] For the same reason, the Court dismisses Mr. Crews's claim of alleged prosecutorial misconduct in impermissibly broadening the indictment. *See* Def.'s Mot., ECF No. 301 at 10. This argument is also procedurally barred since he did not raise it on appeal. *See generally United States v. Crews*, 856 F.3d 91. For claims other than ineffective assistance of counsel, a defendant's failure to raise an available claim on direct appeal bars him from raising the claim in a subsequent collateral attack, unless he shows cause for his prior failure to raise the claim and prejudice because of it. *See Bousley*, 523 U.S. at 622. Mr. Crews shows neither, stating only that he "filed his claim in his Section 28 U.S.C. 2255 motion when the record is complete." Def.'s Mot., ECF No. 301 at 10.

Mr. Crews alleges that his appellate counsel did not meet the Sixth Amendment bar for effective assistance of counsel, since "no strategic decision could explain counsel's failure to pursue the challenge to the career offender enhancement on appeal in this case." Def.'s Suppl. Mot., ECF No. 304 at 4. Mr. Crews contends that since neither his two prior convictions nor his conviction in this case are "crimes of violence" under § 4B1.2(a), he is not a career offender and is not eligible for enhanced sentencing.[16] *See* Def.'s Mot., ECF No. 301 at 4-6.

At the time of Mr. Crews's sentencing, to be a career offender, a defendant had to have at least two prior felony convictions of either a crime of violence or a controlled-substance offense. U.S.S.G. § 4B1.1(a) (2014). An offense could qualify as a "crime of violence" under any of three available definitions: (1) the "elements" clause, which is also referred to as the "force" clause; (2) the "enumerated offense" clause; or (3) the "residual" clause. *See supra* Section III(B)(1)(b); *see also Carr*, 314 F. Supp. 3d at 274 n.1. To succeed in his

---

[16] Although Mr. Crews initially appears to challenge only the classification of his priors as crimes of violence, *see* Def.'s Suppl. Mot., ECF No. 3014 at 5; he later asserts that neither "the current or prior offense(s)" meet the definition. *Id.* at 6. Ground Four of Mr. Crews's original filing also presents an independent challenge to his Hobbs Act conviction in light of *O'Connor*, 874 F.3d at 1158. Therefore, construing the *pro se* filing liberally under *Erickson*, 127 S. Ct. at 2200, the Court considers all three convictions.

claim of ineffective assistance of counsel, Mr. Crews must
establish "a reasonable probability" that at least one of his
three convictions would *not* qualify as a crime of violence under
any of the three available definitions. *Strickland*, 466 U.S. at
694. The Court concludes that each of the three convictions
meets the requirements for a "crime of violence" under
§ 4B1.2(a), and therefore, Mr. Crews's claim fails.

> **(I)     Attempted Hobbs Act Robbery Is a
> Crime of Violence Under the
> Residual and Enumerated Offense
> Clauses Of § 4B1.2(A)**

Mr. Crews argues that his conviction for Hobbs Act robbery
cannot qualify as a crime of violence under any of the three
clauses in § 4B1.2(a). *See* Def.'s Suppl. Mot., ECF No. 304 at 5-
6. The government concedes that "[b]ecause Hobbs Act robbery may
be committed by using force against property (and not just force
against a person), it is broader than the elements-clause
definition of a crime of violence." Gov't's Opp'n, ECF No. 316
at 17-19; *see also O'Connor*, 874 F.3d at 1158 (holding that
"Hobbs Act robbery under § 1951(b)(1) does not qualify as a
crime of violence for purposes of § 4B1.2 of the Guidelines.")
However, the government asserts that Hobbs Act robbery qualifies
as a crime of violence under both the enumerated offense clause
and the residual clause. *See* Gov't's Opp'n, ECF No. 316 at 17-
19. The Court addresses these two clauses in turn.

> **(A)  Attempted Hobbs Act Robbery Satisfies the Enumerated Offense Clause of §4B1.2(A)**

The Hobbs Act defines robbery as:

> "[T]he unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future," to "*person or property*."

18 U.S.C. § 1951(b)(2) (emphasis added). Hobbs Act robbery thus covers actual or threatened force against person and property. To be guilty of attempted robbery, a defendant must have taken a substantial step towards committing that crime and had the requisite mens rea. *See United States v. Hite*, 769 F.3d 1154, 1162 (D.C. Cir. 2014). In contrast to Hobbs Act robbery, the Guidelines' crime of violence definition, under the elements clause, is restricted to "the use, attempted use, or threatened use of physical force against the *person* of another." U.S.S.G. § 4B1.2(a) (emphasis added).

Consequently, Mr. Crews argues that "the statute sweeps more broadly" than the generic offense, and that attempted Hobbs Act robbery is therefore not a crime of violence under the enumerated offense clause.[17] Def.'s Suppl. Mot., ECF No. 304 at 6

---

[17] Crews does not distinguish between his three convictions, nor advance arguments specific to the elements of those offenses. *See generally* Def.'s Mot., ECF No. 301; Def.'s Suppl. Mot., ECF No. 304. The Court considers his general legal arguments in discussing each of the three convictions.

(citing *United States v. Brown*, 765 F. 3d 185, 189 (3d Cir.
2014)). The government responds that "to the extent Hobbs Act
robbery has as an element the use, attempted use, or threatened
use of physical force against a person, it satisfies the
elements clause of § 4B1.2(a)." Gov't's Opp'n, ECF No. 316 at
18. The government adds that "to the extent that defendant's
use, attempted use, or threatened use of physical force is
against property rather than a person, the offense qualifies as
generic extortion and therefore satisfies § 4B1.2(a)'s
enumerated offense clause." *Id*. at 18.

The Court agrees with the government that the portion of
the Hobbs Act that covers force against a person is a crime of
violence under § 4B1.2(a)'s elements clause. The Court's reading
is supported by extensive case law across every Circuit finding
that Hobbs Act robbery is a crime of violence under the elements
clause so long as the relevant statutory definition of "crime of
violence" also covers, like the Hobbs Act definition of robbery,
force against both a person and property, as is the case in
18 U.S.C. § 924(c)(3). *See United States v. Washington*, No. CR
18-13 (RC), 2020 WL 6262095, at *3 (D.D.C. Oct. 23, 2020);
*United States v. Carter*, 422 F. Supp. 3d 299, 306 (D.D.C. 2019)
(collecting cases). The Court therefore focuses its analysis on
the part of the Hobbs Act that is not covered by § 4B1.2(a),
*i.e.*, force deployed against property.

The Court concludes that to the extent Hobbs Act robbery entails force against property rather than a person, it satisfies the enumerated offense of extortion. *See United States v. Moore*, 149 F. Supp. 3d 177, 181 (D.D.C. 2016) (stating that "[t]he Supreme Court has indicated that the generic definition of extortion is obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats") (internal citation and quotation marks omitted); *id.* at 181 (concluding that to the extent Maryland robbery with a dangerous weapon could be committed through threatened use of force against property, the offense "qualifies as generic extortion under the Guidelines"); *see also United States v. Castillo*, 811 F.3d 342, 345-47 (10th Cir. 2015) (holding that California robbery, which can be committed by threatening injury to a person or property, is categorically a crime of violence under the enumerated offense clause of U.S.S.G. § 2L1.2 because it qualifies as either generic robbery or generic extortion); *United States v. Harris*, 572 F.3d 1065, 1066 (9th Cir. 2009) (per curiam) ("[A]ny conduct under Nev. Rev. Stat. § 200.380 that did not satisfy the generic definition of robbery, such as threats to property, would satisfy the generic definition of extortion.")

Divergent authority comes from *O'Connor*, 874 F. 3d at 1157-58, which concludes that the Guidelines definition of extortion

is "ambiguous" and resolves the ambiguity in Mr. O'Connor's favor as "excluding injury and threats of injury to property." However, *O'Connor* can be distinguished since the standard in place at the time Mr. Crews was convicted included threats to property; the extortion definition *O'Connor* uses was only added by the Sentencing Commission in 2016, two years after Mr. Crews was sentenced. *See* U.S.S.G. § 4B1.2, cmt., application n.1 (2016). *O'Connor* explicitly states that the 2016 definition suggests that "Guidelines extortion *no longer* includes threats to property," 874 F. 3d at 1157 (emphasis added); and acknowledges that even with the introduction of the 2016 definition, "a reasonable case can also be made that Guidelines extortion still encompasses threats to property." *Id*. The Court concludes that generic extortion, at the time of Mr. Crews' sentencing, covered any Hobbs Act robbery offense not encompassed by the elements clause.

The Court's decision is not altered by the fact that Mr. Crews was convicted of *attempted* Hobbs Act Robbery. The Court recognizes that in *United States v. Winstead*, 890 F.3d 1082, 1091-92 (D.C. Cir. 2018), the D.C. Circuit held that the commentary to the career offender guidelines impermissibly expanded the definition of a "controlled substance offense" to include attempts to commit such offenses. *See also* USSG § 4B1.2 (stating in Application Note 1 that "crime of violence" and

"controlled substance offense" include the "offenses of aiding
and abetting, conspiring, and attempting to commit such
offenses"). However, *Winstead* addressed controlled substance
offenses, not crimes of violence. *Winstead*, 890 F.3d at 1091-92.
And even if *Winstead* applied retroactively, the elements clause
specifically covers offenses that have "as an element the use,
*attempted use*, or threatened use of physical force." § 4B1.2(a)
(emphasis added). As for attempted extortion, at the time of Mr.
Crews's sentencing, the inclusion of attempt offenses in the
commentary to § 4B1.2 supported the assumption that attempted
enumerated offenses were crimes of violence. U.S.S.G. § 4B1.2,
cmt., application n.1. The Court concludes that attempted Hobbs
Act robbery satisfies the enumerated offense clause.

> **(B)  Attempted Hobbs Act Robbery
> Satisfies the Residual Offense
> Clause of § 4B1.2(A)**

The Court turns next to the residual clause analysis, where
the parties disagree about the precise scope of the residual-
clause inquiry. *Compare* Def.'s Suppl. Mot., ECF No. 304 at 6
(asserting that his convictions did not meet the "purposeful,
violent, and aggressive" conduct necessary to satisfy *Begay*, 553
U.S. at 144-45), *with* Gov't's Opp'n, ECF No. 316 at 13 (arguing
that *Begay*'s "purposeful, violent, and aggressive test" is
inapplicable to the residual clause analysis in this case
because "none of defendant's predicate convictions is a strict

45

liability, negligence, recklessness crime").[18] The Court
concludes that *Begay*'s test, 553 U.S. at 144-45, is inapplicable
to the defendant.

The Court is cognizant that the contours of federal law on
the issue have been highly uncertain, creating "numerous splits
among the lower federal courts," where it has proved "nearly
impossible to apply [the residual clause] consistently."
*Chambers v. United States*, 555 U.S. 122, 133, 129 S. Ct. 687
(DATE) (ALITO, J., concurring in judgment). The Supreme Court
too has "had trouble making sense of the residual clause," with
a series of decisions that have left lower courts divided.
*Johnson,* 135 S. Ct. at 2559.

In *James*, the Court asked whether "the risk posed by [the
offense] is comparable to that posed by its closest analog among
the enumerated offenses." *James*, 550 U.S. at 208. In *Begay*, 553

---

[18] Hobbs Act robbery "plainly involves a higher degree of
culpability than accidental, negligent, or even reckless
conduct." *United States v. McCallister*, Cr. No. 15-171 (ABJ),
2016 WL 3072237, at *11 (D.D.C. May 31, 2016) (internal
quotation marks omitted). The mens rea for the attempted and
completed offenses is the same. *Hite*, 769 F.3d at 1162. Maryland
robbery is "a specific intent crime." *Hook v. State*, 553 A.2d
233, 236 (Md. 1989). Maryland carjacking requires a "general
intent to obtain unauthorized possession or control from a
person in actual possession by force, intimidation or threat of
force" and is thus an intentional crime, albeit not with
'specific intent'. *Harris v. States*, 728 A.2d 180, 182-88 (Md.
1999).

U.S. at 143-45, the Court held that to qualify as a violent felony under the residual clause, a crime must resemble the enumerated offenses "in kind as well as in degree of risk posed," and ushered in the "purposeful, violent, and aggressive conduct" test. *Sykes*, however, subsequently criticized the *Begay* test as an "addition to the statutory text," explained that "levels of risk" would normally be dispositive, and limited Begay to "strict liability, negligence, and recklessness crimes." *Johnson*, 135 S. Ct. at 2551 (citing *Sykes*, 564 U.S. 1, 131 S. Ct. 2267, 2275–2276 (2011)). *Johnson* acknowledged the challenges with the residual clause, then declared the residual clause in the ACCA unconstitutionally vague, and overturned the contrary holdings in *James*, 550 U.S. at 208, and *Sykes*, 131 S. Ct. at 2267, before *Beckles*, 137 S. Ct. at 895, distinguished that the residual clause in the U.S.S.G is valid.

This leaves lower courts with the continued uncertainty of how to apply the residual clause. Circuit courts have split, although not evenly; a majority have limited the application of the "purposeful, violent, and aggressive" test from *Begay*, 553 U.S. at 143-45, only to crimes of strict liability, negligence, and recklessness, and held that for all other offenses, the level of risk alone, compared to its closet analog among the enumerated offenses, is sufficient to determine whether the crime in question qualifies as a crime of violence under the

residual clause. *See, e.g.*, *United States v. Prince*, 772 F.3d
1173, 1177 (9th Cir. 2014); *United States v. Miller*, 721 F.3d
435, 438–39 (7th Cir. 2013); *United States v. Evans*, 699 F.3d
858, 865 (11th Cir. 2012); *Harrington v. United States*, 689 F.3d
124, 136 (2d Cir. 2012); *United States v. Lillard*, 685 F.3d 773,
776 (8th Cir. 2012); *United States v. Grupee*, 682 F.3d 143, 149
(1st Cir. 2012); *United States v. Jones*, 673 F.3d 497, 506 (6th
Cir. 2012); *United States v. Smith*, 652 F.3d 1244, 1248 (10th
Cir. 2011).

The Third and Fourth Circuits meanwhile, have continued to
apply Begay's "purposeful, violent, and aggressive" test to
crimes with an intentional or knowing mens rea. *See United
States v. Martin*, 753 F.3d 485, 490 (4th Cir. 2014); *United
States v. Johnson*, 675 F.3d 1013, 1019 (3d Cir. 2012). The D.C.
Circuit has yet to address the question. The Court adopts the
same approach as the majority.

The Court is mindful that at first blush, the Supreme
Court's recent ruling in *Borden v. United States*, 141 S. Ct.
1817, 1819 (2021), runs somewhat counter to the majority opinion
encapsulated by *Sykes*, 564 U.S. at 11–13. [19] Compare *Borden*, 141
S. Ct. at 1830 (citing *Begay*, 553 U.S. at 147) (holding that

---

[19] Although three Justices concurred in Justice Kagan's opinion,
one Justice concurred only in the judgment, limiting the impact
of *Borden*, 141 S. Ct. at 1820.

"[h]owever blameworthy," reckless or negligent conduct is "far removed" from the deliberate kind of behavior associated with "purposeful, violent, and aggressive" crimes under the elements clause of ACCA), *with Sykes*, 564 U.S. at 11-13 (holding that *Begay*'s "purposeful, violent, and aggressive" test is limited to crimes of strict liability, negligence, or recklessness). The disparity is further compounded by a footnote to *Borden* which asserts the Court's "consistent view of ACCA's predicates" as "purposeful, violent, and aggressive" crimes, 141 S. Ct. at 1831 n.7, whereas the majority approach holds that the level of risk is dispositive in the crime of violence determination for all crimes other than those with a mens rea of strict liability, negligence, or recklessness. *See, e.g.*, *Prince*, 772 F.3d at 1177.

However, the Court is persuaded by the majority approach because *Borden* applies specifically to the elements clause of ACCA and therefore does not impact the residual clause analysis of the USSG. *See* 141 S. Ct. at 1821. The USSG's residual clause, unlike ACCA's, was held to be valid in *Beckles*, 137 S. Ct. at 892; and therefore, covers conduct that "presents a serious potential risk of physical injury to another." § 4B1.2(a).

To the extent that *Borden* has any bearing on the current case, it strengthens the government's contention that the test in *Begay*, 553 U.S. at 143, is inapplicable. First, if, as *Borden*

suggests, ACCA's predicates are "purposeful, violent, and
aggressive" crimes," 141 S. Ct. at 1831 n.7.; the USSG's
predicates must be broader for the residual clause in § 4B1.2(a)
to have meaning. Second, in reaching its holding, the *Borden*
Court emphasized the use of the phrase "against the person of
another" in ACCA's elements clause. 141 S. Ct. at 1825. Justice
Kagan concluded that this phrase encompasses only purposeful or
knowing crimes, not reckless ones. *Id*. at 1826. Since the
residual clause contains no such parallel phrase, using the
*Begay* test for § 4B1.2(a)'s residual clause analysis, as Mr.
Crews urges, inserts "purposeful" mens rea when the text of the
residual clause text does not explicitly contemplate such a
restriction. *See* Def.'s Suppl. Mot., ECF No. 304 at 6;
§ 4B1.2(a). Thus, the Court declines to apply *Begay*'s
"purposeful, violent, and aggressive" similar-in-kind test, 553
U.S. at 143, to the residual clause analysis for each of Mr.
Crews's convictions.

Mr. Crews does not explain how or why his attempted Hobbs
Act robbery conviction falls short of the standard he
acknowledges, *i.e.*, "whether the offense presents a serious
potential risk of physical injury to another." Def.'s Suppl.
Mot., ECF No. 304 at 6 (citing *Begay*, 553 U.S. at 142) (internal
quotation marks omitted). The government, in contrast, asserts
that Hobbs Act robbery carries "a substantial likelihood of

provoking a physical confrontation," since it "must be committed using actual or threatened force, or violence, or fear of injury," and that it must therefore be a crime of violence. Gov't's Opp'n, ECF No. 316 at 15. The Court agrees.

A conviction for attempted Hobbs Act robbery means that Mr. Crews attempted to take the property of another, "against his will, by means of actual or threatened force, violence, or fear of injury" to person or property. 18 U.S.C. § 1951(b)(2). Extensive federal precedent has held that the elements of Hobbs Act robbery categorically involve "conduct that presents a serious potential risk of physical injury to another." *See, e.g., United States v. Mitchell*, 743 F.3d 1054, 1060-63 (6th Cir. 2014) (Tennessee robberies categorically qualified as violent felonies under ACCA's residual clause); *United States v. Hollins*, 514 F. App'x 264, 269-70 (3d Cir. 2013) ("robbery by force however slight qualifies as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)"); *United States v. Welch*, 683 F.3d 1304, 1312 (11th Cir. 2012) (even "robbery by sudden snatching" poses a serious risk of physical injury to another under the Guidelines' residual clause); *cf. United States v. Eshetu*, 863 F.3d 946, 956 (D.C. Cir. 2017) (finding that a Hobbs Act robbery conspiracy "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," and is

thus a crime of violence under 18 U.S.C. § 924(c)'s residual clause (internal quotation marks omitted)), *vacated in part*, 898 F.3d 36 (2018) (holding that § 924(c)'s residual clause was void for vagueness pursuant to *Dimaya*, 138 S. Ct. at 1210).

The Court sees no reason to disagree with this overwhelming precedent and perceives no valid distinction between the threat posed by Attempted Hobbs Act robbery and a completed robbery. Mr. Crews does not endeavor to distinguish the two, and the government aptly notes that an attempted robbery may pose an even higher risk of physical injury, "precisely because "the attempt [was] thwarted by some outside intervenor – be it a property owner or law enforcement officer." Gov't's Opp'n, ECF No. 316 at 16 (citing *James*, 550 U.S. at 205). The Court concludes that attempted Hobbs Act robbery is a crime of violence under both the enumerated clause and the residual clause of § 4B1.2(a).

<div align="right">

**(II)   Mr. Crews's Maryland Robbery Conviction Is a Crime of Violence Under the Residual Clause of § 4B1.2(A)**

</div>

Mr. Crews contends that his conviction for Maryland robbery cannot qualify as a crime of violence under any of the three clauses in § 4B1.2(a). *See* Def.'s Suppl. Mot., ECF No. 304 at 6. Since the government challenges his assertion only for the elements clause and the residual clause, the Court focuses its inquiry on those two clauses.

**(A)  Maryland Robbery Does Not Satisfy the Elements Clause of § 4B1.2(A)**

On the elements clause, Mr. Crews asserts that "the offense must have an element of physical force," which is "capable of causing physical pain or injury to another person." Def.'s Mot., ECF No. 304 at 6 (citing *Johnson*, 559 U.S. at 140). The government counters that "as interpreted by Maryland courts, robbery committed either by force or by threatened force (i.e., intimidation) requires more than *de minimis* force; rather, it requires force or threatened force capable of causing a person bodily harm and thus satisfies § 4B1.2(a)'s elements clause." Gov't's Opp'n, ECF No. 316 at 22.

"The first step in determining whether a state law offense is a violent felony under the elements clause is to look at the state's definition of the offense." *Wilson*, 249 F. Supp. 3d at 316. In Maryland, robbery is defined as "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or by putting him in fear." *Coles v. Maryland*, 374 Md. 114, 821 A.2d 389, 394 (2003). The next question is whether the force required to commit Maryland Robbery is the equivalent of the force required by

[§ 4B1.2(a)]. *Wilson*, 249 F. Supp. 3d at 317.[20] The Court concludes that it is not.

Persuasive authority in this district has previously held that "the force required to overcome resistance and support a conviction for Maryland Robbery does not necessarily rise to the level of violent force capable of causing physical injury." *Id.* at 317-18.[21] The District Court echoes *Wilson*'s reasoning, which builds on extensive Maryland caselaw. 249 F. Supp. 3d at 317-318 (collecting cases); *see also Giles v. Maryland*, 8 Md.App. 721, 261 A.2d 806, 807 (1970) (explaining that there is sufficient violence to constitute robbery if the defendant were "to run against another, or rudely push him about, for the purpose of diverting his attention and robbing him"; *Thomas v. Maryland*,

---

[20] Although *Wilson,* 249 F. Supp. 3d 305 *and Johnson,* 559 U.S. 133*,* are both cases that deal with the ACCA, the force clause in § 4B1.2(a)is identical to the one in ACCA. *Compare* 18 U.S.C. 924(e)(2)(B), *with* USSG § 4B1.2(a).

[21] The D.C. Circuit previously noted that the U.S. Attorney's Office ("USAO") for the District of Maryland had conceded in a Fourth Circuit case that Maryland common law robbery was not a violent felony under ACCA's elements clause. *See United States v. Redrick*, 841 F.3d 478, 482 (D.C. Cir. 2016). However, since *Redrick*, the USAO has reconsidered its position and successfully argued in the District of Maryland that Maryland robbery satisfies § 4B1.2(a)'s elements clause, which is identical to ACCA's elements clause.  *See* AR, *United States v. Overton*, Sentencing Tr., ECF No. 316-1 at 4; AR, *United States v. Garrett*, Sentencing Tr., ECF No. 316-2 at 4.

128 Md.App. 274, 737 A.2d 622, 639 (1999) ("[I]f the pickpocket or his confederate jostles the owner, or if the owner, catching the pickpocket in the act, struggles unsuccessfully to retain possession, it is robbery." (internal quotations omitted).

The government cites divergent authority, suggesting that Maryland robbery does require "actual violence" and therefore satisfies the elements clause of § 4B1.2(a). *See* Gov't's Opp'n, ECF No. 316 at 22 (referencing *Spencer v. State*, 30 A.3d 891, 895-900 (Md. 2011); *see also United States v. Overton*, Sentencing Tr., ECF No. 316-1 at 4; *United States v. Garrett*, Sentencing Tr., ECF No. 316-2 at 4. However, the Court concludes that the violence contemplated by Maryland robbery does not meet the force requirement of § 4B1.2(a). In reaching its holding, the Court finds it significant that the "degree of force necessary to constitute a robbery [in Maryland] is immaterial so long as it is sufficient to compel the victim to part with his property." *Facon v. Maryland,* 144 Md.App. 1, 796 A.2d 101, 119 (2002) (internal citations and quotations omitted). In contrast, the elements clause contemplates "violent force – that is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140.

Furthermore, there is sufficient violence for Maryland robbery whenever the victim resists the attempted robbery, no matter "however slight the resistance," *West v. Maryland,* 312

Md. 197, 539 A.2d 231, 234 (1988) (internal citation omitted); and even if the resistance does not "emanate entirely from the victim." *Raiford v. Maryland*, 52 Md.App. 163, 447 A.2d 496, 499(1982), *aff'd in part, rev'd in part on other grounds*, 296 Md. 289, 462 A.2d 1192 (1983) (holding that a purse snatching is accompanied by adequate force to constitute robbery when the victim felt the "shoulder strap" of her purse being "ripped from her arm" because "the article stolen is so attached to the person or clothing of the victim that resistance is offered to the taking solely by reason of such attachment" (internal citation and quotations omitted). The elements clause, however, contemplates violent force targeted specifically at the "*person of another,*" USSG § 4B1.2(a) (emphasis added); not violence arising from resistance posed by their *property*.[22] Consequently, the Court concludes that Maryland robbery is not a crime of violence under the elements clause of § 4B1.2(a).

---

[22] The Court in *Overton*, ECF No. 316-1 at 4-5, acknowledges that "[t]he argument against robbery being a crime of violence is primarily the proposition that violence or threat of violence can be directed against property rather than a person," but nonetheless concludes that the "[Maryland] Court of Appeals focuses on force or threat of force against a person, not necessarily property."

**(B)     Maryland Robbery Satisfies the Residual Clause of § 4B1.2(A)**

As stated *supra* Section IV(B)(1)(b)(i)(I)(B), the Court declines to apply the "purposeful, violent, and aggressive" test, *Begay*, 553 U.S. at 144-45, to Mr. Crews's convictions. The question for the Court therefore is "whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James*, 550 U.S. at 208. Additionally, the offense in question must be "roughly similar, in kind as well as in degree of risk posed, to the [four enumerated offenses]." *Begay*, 553 U.S. at 143.

As the Court has already discussed, *see supra* Section IV(B)(1)(b)(i)(II)(A), Maryland robbery entails the carrying away of another's property "from his person or in his presence ... by violence or putting in fear." *Coles*, 821 A.2d at 394 (emphasis added). "The hallmark of robbery, which distinguishes it from theft, is the presence of force or threat of force, the latter of which also is referred to as intimidation." *Id.* Even if the force itself is *de minimis* in certain cases, which on the margins would prevent it from meeting the violence bar for the elements clause, robbery still "presents a serious potential risk of physical injury to another." § 4B1.2(a). In addition,

the commentary on § 4B1.2 expressly includes robbery in a list of offenses that qualify as crimes of violence. *Id.*, cmt. n.1.

Accordingly, the Court concludes that Maryland robbery is a crime of violence under the residual clause. *Accord United States v. Riley*, 856 F.3d 326, 329 (4th Cir. 2017) (holding, in reference to Maryland simple robbery, that robbery is "a paradigmatic example" of a crime presenting "a serious potential risk of physical injury to another"); *United States v. Strevig*, 663 F. App'x 908, 914-15 (11th Cir. 2016) (Maryland robbery qualifies as a crime of violence under § 4B1.2(a)'s residual clause).

> **(III)   Maryland Carjacking Is a Crime of Violence Under the Elements and Residual Clause of § 4B1.2(A)**

Mr. Crews's third conviction is for Maryland carjacking. Mr. Crews objects to its classification as a crime of violence under all three clauses of § 4B1.2(a), but provides no specific arguments on the elements of the conviction. *See* Def.'s Suppl. Mot., ECF No. 304 at 5-7. Since the government challenges defendant's assertion only for the elements clause and the residual clause, *see* Gov't's Opp'n, ECF No. 316 at 23-25, the Court's inquiry addresses those two clauses.

(A)    **Maryland Carjacking Satisfies the Elements Clause of § 4B1.2(A)**

Mr. Crews generally contends that his prior convictions cannot be crimes of violence under the elements clause because they lack the requisite "strong physical force" which could cause "physical pain or injury to another person." Def.'s Suppl. Mot., ECF No. 304 at 6 (citing *Johnson*, 559 U.S. at 140). Further, he asserts that the Court must presume his conviction was based "on nothing more than the most innocent conduct," pursuant to the Court's decision in *Moncrieffe*, 569 U.S. at 191. *Id.*

In response, the government argues that "Maryland carjacking is indistinguishable from federal carjacking for purposes of this analysis," Gov't's Opp'n, ECF No. 316 at 25; which similarly makes it a crime to take a motor vehicle "from the person or presence of another by force and violence or by intimidation, or attempts to do so." 18 U.S.C. § 2119 (footnote omitted). Since several District Courts have held that federal carjacking is a crime of violence, the government asserts that Maryland carjacking, which also "expressly requires the actual or threatened use of force or violence, or intimidation," should be too. Gov't's Opp'n, ECF No. 316 at 26. The Court agrees and holds that the Maryland statute satisfies the elements clause requirement of "use, attempted use, or threatened use of

physical force against the person of another." USSG §
4B.2(a)(1).

The Court begins its analysis by revisiting the standard
for a crime of violence under the elements clause analysis:
whether the "physical force" used, attempted, or threatened to
commit the offense is "violent force – that is, force capable of
causing physical pain or injury to another person." *Johnson*, 559
U.S. at 140. The Court's focus is whether "the least of th[e]
acts criminalized ... are encompassed by the generic federal
offense." *Carr*, 946 F.3d at 601 (internal citation and quotation
marks omitted).

The Maryland carjacking statute states: "[a]n individual
may not take unauthorized possession or control of a motor
vehicle from another individual who actually possesses the motor
vehicle, by force or violence, or by putting that individual in
fear through intimidation or threat of force or violence." Md.
Code Ann., Crim. Law § 3-405(b). The minimal force element in
Maryland's definition of carjacking is therefore "putting [the
victim] in fear through intimidation or threat of force or
violence." *Id.* The federal carjacking statue similarly covers
intimidation. *See* 18 U.S.C. § 2119. Although the Court is not
aware of any federal precedent addressing whether Maryland
carjacking is a crime of violence under the elements clause,
"intimidation" in the federal carjacking statute, "necessarily

60

includes a threat of violent force within the meaning of the
'[elements] clause.'" *United States v. Evans*, 848 F.3d 242, 247-
48 (4th Cir. 2017). *See also United States v. Folse*, 301 F.
Supp. 3d 1037, 1065 (D.N.M. 2017) (federal carjacking is
categorically a crime of violence under § 4B1.2(a)'s elements
clause); *In re Smith*, 829 F.3d 1276, 1280 (11th Cir.
2016) (holding that "intimidation" in the
federal carjacking statute necessarily means threatened use
of violent physical force under the elements clause). The Court
arrives at the same conclusion for Maryland carjacking.

The Court's conclusion is not altered by the fact that
Maryland carjacking is a general intent crime, whereas the mens
rea for federal carjacking is the specific "intent to cause
death or serious bodily injury." 18 U.S.C. § 2119; *see also
Harris*, 353 Md. at 610 (holding that carjacking is a general
intent crime). The focus of the inquiry under the elements
clause is on the *actus reus* of carjacking, i.e., the action or
conduct that is a constituent element of the crime;[23] the issue
before the Court is whether taking a vehicle from the possession

---

[23] As discussed *supra*, *Borden*, 141 S. Ct. at 1819, held that
crimes of violence that require only a mens rea of recklessness
cannot count as a "violent felony" under the elements clause of
ACCA. Even if *Borden* were to apply to the elements clause
analysis here, Maryland's general intent requirement meets the
*Borden* standard. *See Harris*, 728 A.2d at 182-88.

of another, even if by intimidation or the threat of force, involves a degree of force that is "capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. The Court concludes that it does.

> **(B)    Maryland Carjacking Satisfies the Residual Clause of § 4B1.2(A)**

The government argues that "considering the quantum of force or intimidation required to accomplish a typical carjacking, Maryland carjacking presents at least as great a risk of physical injury as a robbery, and like robbery, it poses a risk of face-to-face confrontation . . .." Gov't's Opp'n, ECF No. 316 at 23-24. The Court concurs and holds that Maryland carjacking is a crime of violence since it "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).

The Court's analysis begins by looking at the statute, which is crafted such that control of the vehicle must be taken over from the individual *in actual possession*, *see* Md. Code Ann., Crim. Law § 3-405(b), thereby creating a higher risk of confrontation. *Cf. United States v. Williams*, 537 F.3d 969, 974 (8th Cir. 2008) ("recognize[ing] that [in comparison to auto theft] there is something more violent and aggressive about someone who chooses to use force when stealing a car").

Whereas robbery may be a grab and go for easily portable items, *see Raiford v. Maryland*, 447 A.2d at 499; transferring a car from someone's possession, by virtue of its size and capabilities, is inherently a risker proposition. As the government observes, "a motor vehicle can itself be a dangerous weapon, and thus there is risk of injury not only in the act of attempting to take but also in the subsequent act of maintaining possession or control of the motor vehicle." Gov't's Opp'n, ECF No. 316 at 24. *Cf. United States v. Brown*, 200 F.3d 700, 706 (10th Cir. 1999) (stating, in analysis of federal carjacking, "the crime of carjacking carries with it a substantial risk of the use of physical force").

The Court has already held that Maryland robbery is a crime of violence under the residual clause, *see supra*; it now holds that Maryland carjacking is at least as dangerous as Maryland robbery, and therefore also a crime of violence. *Cf. United States v. Mathijssen*, 406 F.3d 496, 500 (8th Cir. 2005) (holding that California's carjacking statute satisfies § 4B1.2(a)'s residual clause). Consequently, Maryland carjacking satisfies both the elements and the residual clause of the Guidelines. § 4B1.2(a)(2).

Accordingly, because each of Mr. Crews's three convictions were crimes of violence, the Court concludes that his counsel was not deficient in failing to challenge his sentencing based

on the career offender guidelines. For counsel to have been
deficient, there would have had to have been not just a mere
possibility, but rather a "reasonable probability" that one of
these crimes was not a crime of violence, and that absent
counsel's failure to challenge the career offender sentencing,
the result of the proceeding would have been different.
*Strickland*, 466 U.S. at 688.

### ii. Mr. Crews's Counsel Did Not Waive His Rights Under the Speedy Trial Act

Mr. Crews contends that his trial counsel was ineffective
for waiving his speedy trial rights without his "permission" and
without him "signing any papers" during the retrial proceedings.
Def.'s Mot., ECF No. 301 at 5. The government acknowledges that
"speedy-trial issues were not discussed on the record between
the mistrial declared on August 14, 2013, and the retrial that
began on February 10, 2014," but asserts that "trial counsel did
not waive any right to dismissal under the Speedy Trial Act,
even implicitly, because after accounting for time excludable
under § 3161(h), less than 70 days elapsed between the mistrial
and the retrial." Gov't's Opp'n, ECF No. 316 at 29-31. The Court
agrees, and consequently need not address on the merits whether
Mr. Crews has established deficient performance or prejudice
under *Strickland*, 66 U.S. at 687.

When a defendant is to be retried, the Speedy Trial Act
allows for 70 days for the new trial to commence, measured "from

the date the action occasioning the retrial becomes final." 18 U.S.C. § 3161(e). The Act excuses several periods of delay, including "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." *Id.* § 3161(h)(1)(D). "Regardless of whether the district court could have held a hearing on [a] motion earlier . . . the entire period of the motion's pendency is excluded." *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014) (citing *Henderson v. United States,* 476 U.S. 321, 330, 106 S. Ct. 1871(1986).

Mr. Crews filed a bond review motion on September 6, 2013, stopping the Speedy Trial Act clock twenty-three days after the Court declared a mistrial and the clock had begun ticking. *See* Mot. for Bond, ECF No. 157. The government opposed on September 12, 2013. *See* Mem. in Opp'n, ECF No. 159. On September 17, 2013, Mr. Crews's counsel, Mr. Brennwald, asked the Court to defer ruling on the motion since he was "still waiting to get some other information that I think should be instructive to the court" and had not yet filed a reply. 9/17/13 Tr., ECF No. 357-1 at 12-13. Based on Mr. Brennwald's articulated preference, the motion was held in abeyance until a reply was filed. *Id.* at 13; Minute Order, Sept. 18, 2013 (stating that "Mr. Crews's motion

for bond review is hereby held in abeyance pending the filing of a reply brief by Mr. Crews"). Mr. Brennwald never filed a reply nor requested a hearing on the motion. *See generally* Docket for Crim. Action No. 11-372-1. The Court denied the motion without prejudice on March 18, 2014, when the jury issued a verdict. Minute Order, Mar. 18, 2014.

Because of Mr. Crews's pending pre-trial bond review motion, the time from the filing of the motion on September 6, 2013, to the commencement of the trial on February 10, 2014, is excluded from the Speedy Trial Act calculation since it was a "period of delay resulting from other proceedings concerning the defendant." 18 U.S.C. § 3161(e). Consequently, only 23 non-excludable days passed between the declaration of the mistrial on August 14, 2013, and the retrial that began on February 10, 2014.

The several months for which the motion was pending do not impact the calculation. *See United States v. Rice*, 746 F.3d 1074, 1080 (D.C. Cir. 2014) ("If the court does not hold a hearing on the motion, the Act excludes the period of time between the filing of the motion and the day the court receives all the submissions it reasonably expects in relation to the motion." (internal citation omitted); *accord United States v. Douglas*, 81 F.3d 324, 327 & n.1 (2d Cir. 1996) (no Speedy Trial Act violation where hearing was "held in abeyance during the

pretrial period in order to allow the counsel to come to an agreement on their own" and demand for hearing was never withdrawn); *United States v. Gonzales*, 897 F.2d 1312, 1316 (5th Cir. 1990) (absent showing that defendant "attempted unsuccessfully to obtain hearings on the pretrial motions or that hearings were deliberately refused with intent to evade the Speedy Trial Act," delays resulting from pretrial motions were excludable).

Since Mr. Crews's Speedy Trial Act rights were not violated, his claim as to defense counsel's deficient performance fails. The Court need not consider whether Mr. Crews established prejudice, since a successful ineffective assistance of counsel claim must show both deficient performance and prejudice. *Strickland*, 466 U.S. at 687.

### 2. *Johnson*, *Dimaya*, and *Davis* Do Not Impact Mr. Crews's Sentencing

In his most recent brief filed through counsel, Mr. Crews argues that his sentence should be reconsidered based on the Supreme Court's decisions in *Johnson* and *Davis*. *See* Def.'s Add'l Suppl. Mot., ECF No. 331 at 26; *see also Johnson*, 135 S. Ct. at 2551 (invalidating residual clause in ACCA, 18 U. S. C. §924(e)(2)(B)); *Davis*, 139 S. Ct. at 2319 (invalidating residual clause in 18 U.S.C. § 924(c)(3)(B)). Relatedly, he also argues in his original filing that Hobbs Act Robbery is not a crime of violence following *Dimaya*. *See* Def.'s Mot., ECF No. 301 at 8;

*Dimaya*, 138 S. Ct. at 1210 (invalidating residual clause in the INA, 18 U.S.C. § 16(b)). Mr. Crews asserts that the "Supreme Court's decision in *United States v. Davis* is retroactive and applies to defendant." Def.'s Add'l Suppl. Mot., ECF No. 331 at 29.

The government does not respond to Mr. Crews's claim regarding *Dimaya*. *See* Gov't's Opp'n, ECF No. 316 at 36. The government does, however, counter that Mr. Crews's descriptions of *Johnson* and *Davis* fail to acknowledge that both cases involved residual clauses in federal statutes that are not applicable to his convictions. *See* Gov't's Suppl. Opp'n, ECF No. 338 at 16. This defense is equally true of *Dimaya*, which applies to the residual clause in the Immigration and Nationality Act. *See* 138 S. Ct. at 1210. Accordingly, none of these three cases impact Mr. Crews's sentence.

Mr. Crews's claim is spurious given his own acknowledgement that "in *Beckles v. United States*, 137 S. Ct. 886 (2017), the Supreme Court ruled that the void for vagueness argument does not subject the Sentencing Guidelines to a void for vagueness challenge." Def.'s Add'l Suppl. Mot., ECF No. 331 at 28. *Johnson, Dimaya* and *Davis*, all of which overturned the residual clause in federal statutes, are easily distinguished since they involved statutes that are not at issue in Mr. Crews's

68

conviction. *See Johnson*, 135 S. Ct. at 2551; *Davis*, 139 S. Ct. at 2319; *Dimaya*, 138 S. Ct. at 1210.

Unlike the statutes at issue in *Johnson*, *Dimaya* and *Davis*, the Sentencing Guidelines, by virtue of being advisory, "do not implicate the twin concerns underlying vagueness doctrine providing notice and preventing arbitrary enforcement." *Beckles*, 137 S. Ct. at 894.[24] Even though the residual clause in the Sentencing Guidelines, *see* § 4B1.2(a)(2); is identically worded to the one in *Johnson*, because the Guidelines are merely advisory, they "do not regulate the public by prohibiting any conduct or by establishing minimum and maximum penalties for [any] crime," and are therefore not void for vagueness. *Beckles*, 137 S. Ct. at 895 (brackets in original) (internal citation omitted). The Court concludes that Mr. Crews's claim lacks merit.

### 3. No Further Hearings Are Required to Deny Mr. Crews's Claims

Mr. Crews contends that the Court must grant an evidentiary hearing on his § 2255 motion unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Def.'s Suppl. Mot., ECF. No 304 at 7; 28 U.S.C. § 2255 (1994). Since the record in this case establishes

---

[24] *Booker v. United States*, 543 U.S. 200, 125 S. Ct. 738 (2006), made the federal sentencing guidelines advisory.

that Mr. Crews's § 2255 motion is meritless, no further hearing is needed.

The question for the court is not whether it is "even the least bit uncertain" as to whether Mr. Crews has met his burden, Def.'s Suppl. Mot. at 7; rather the issue is whether "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court." *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996) (quoting Rules Governing § 2255 Proceedings, Rule 4, 28 U.S.C. foll. § 2255 (1994)). Moreover, "a district judge's decision not to hold an evidentiary hearing before denying a § 2255 motion is generally respected as a sound exercise of discretion" when, as here, "the judge denying the § 2255 motion also presided over the trial in which the petitioner claims to have been prejudiced." *Id.* at 625.

## V.    Conclusion

For the foregoing reasons, Mr. Crews's motion to compel, ECF No. 289; § 2255 motion, ECF No. 301; supplemental motion to correct sentence under 28 U.S.C. § 2255, ECF No. 304; and supplement to motion for a new trial, ECF No. 331 are **DENIED.** An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **December 7, 2021**