**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA, |
| v. |
| DONNELL CREWS, |
| Defendant. |

Crim. Action No. 11-372-1 (EGS)

<u>**MEMORANDUM OPINION**</u>

**I.   Introduction**

Defendant Donnell Crews ("Mr. Crews" or "Defendant") was
convicted by a jury of attempted interference with commerce by
robbery. *See* Judgment, ECF No. 266 at 1.[1] He was sentenced to 225
months of imprisonment. *Id.* at 2. Mr. Crews subsequently filed a
motion for a new trial or for a correction in his sentence
pursuant to 28 U.S.C. § 2255. *See generally* Motion Under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a
Person in Federal Custody ("Def.'s § 2255 Mot." or "§ 2255
Motion"), ECF No. 301.

In his § 2255 Motion, Mr. Crews made two arguments in favor
of setting aside his conviction or granting a new trial. First,
he argued ineffective assistance of counsel in violation of his

---

[1] When citing electronic filings throughout this Memorandum
Opinion, the Court cites to the ECF header page number, not the
original page number of the filed document.

Sixth Amendment rights. *See* Def.'s § 2255 Mot., ECF No. 301 at 5-9; Def.'s Suppl. Mot. to Correct Sentence ("Def.'s Suppl. § 2255 Mot."), ECF No. 304 at 3; Def.'s Suppl. to Mot. for New Trial ("Def.'s Add'l Suppl. § 2255 Mot."), ECF No. 331 at 11, 19. Second, he argued that his sentence should be reconsidered based upon the Supreme Court's rulings in *Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551 (2015), and *United States v. Davis*, 139 S. Ct. 2319 (2019). *See* Def.'s Add'l Suppl. § 2255 Mot., ECF No. 331 at 26. The Court denied Mr. Crews' § 2255 Motion, along with the two supplemental § 2255 filings. *See* Mem. Op., ECF No. 360 at 2.

Mr. Crews now moves for a certificate of appealability so that he can appeal the Court's decision. *See* Def.'s Mot. for Certificate of Appealability ("Def.'s COA Mot."), ECF No. 366. Upon consideration of the motion, the response, the applicable law and regulations, and the entire record and the materials cited therein, for the reasons explained below, the Court **DENIES** Mr. Crews' motion for a certificate of appealability.

## II.  Factual and Procedural Background

The Court's previous Memorandum Opinion set forth the facts of this case in detail. *See United States v. Crews*, No. 11-372-1 (EGS), 2021 WL 5798033, at *1-4 (D.D.C. Dec. 7, 2021). What follows is a summary of the facts and procedural history necessary to provide context for Mr. Crews' current motion.

### A. Attempted Hobbs Act Robbery

On September 21, 2011, three men attempted to rob Hugh Whitaker, an employee of a cash-in-transit company, while he exited a CVS with approximately $10,000 in cash. *United States v. Crews*, 856 F.3d 91, 92-93 (D.C. Cir. 2017). One of the men drew a handgun and demanded the cash Mr. Whitaker was carrying. *Id.* at 92. In response, Mr. Whitaker drew his own handgun and the two men exchanged gunfire. *Id.* Mr. Whitaker retreated into the CVS uninjured, and the three men — later identified as Mr. Crews, Kirk Dean, and Anthony James — fled the scene. *Id.*

The police stopped Mr. Crews and Mr. James a few blocks away, and a witness identified them as being two of the men who had confronted Mr. Whitaker. *Id.* at 92-94. Meanwhile, a fourth individual, Antwon Crowder, who had driven the other three men to the CVS, drove the injured Mr. Dean to a hospital. *Id.* at 93-94. Mr. Dean had sustained two gunshot wounds during the CVS gunfire exchange, but he died from a separate gunshot wound, unrelated to the attempted robbery, that he sustained in transit from the CVS to the hospital. *Id.* at 94.

On December 20, 2011, a grand jury charged Mr. Crews with four counts by indictment: (1) Conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951 (also known as the Hobbs Act); (2) Attempted interference with commerce by robbery and aiding and abetting in violation of 18 U.S.C. §§ 2

and 1951; (3) Using, carrying, or possessing a firearm during a
crime of violence in violation of 18 U.S.C. § 924(c); and (4)
Unlawful possession of a firearm by a convicted felon in
violation of 18 U.S.C. § 922(g). Indictment, ECF No. 12.

### B. Trials and Sentencing

Mr. Crews and Mr. Crowder were tried jointly, and the first
trial concluded with a hung jury; on August 14, 2013, the Court
declared a mistrial. *Crews*, 856 F.3d at 93-94. Following a
rescheduling, the defendants' retrial began on February 10,
2014. *See* Minute Entry (Jan. 10, 2014). On March 12, 2014, the
jury found Mr. Crews guilty of attempted interference with
commerce by robbery. Verdict Form (Crews), ECF No. 221 at 1.
After Mr. Crowder decided to enter a guilty plea, the government
informed the Court that it planned to dismiss the remaining
counts against Mr. Crews and requested a sentencing date. *See*
Gov't's Mot. to Order Presentence Investigation Report and
Schedule Sentencing Date, ECF No. 234 at 1.

The U.S. Probation Office determined that Mr. Crews was a
career offender under § 4B1.1 of the Sentencing Guidelines,
based on his conviction in this case, a 2003 robbery conviction
in Maryland, and a 2005 carjacking conviction in Maryland.
Presentence Investigation Report ("PSI Report"), ECF No. 252 at
6-11. Accordingly, the Probation Office calculated Mr. Crews'
total offense level as 32, his criminal history category as VI,

4

and his guidelines range as 210 to 240 months. Sentencing
Recommendation (Crews), ECF No. 253 at 1. At sentencing, on
December 16, 2014, Mr. Crews' counsel asserted that "either one
or both of the prior convictions are not qualifying offenses
such that [Mr. Crews] would now be a career offend[er]." Tr. of
Sentencing Proceedings, ECF No. 315 at 7. The Court did not
determine whether Mr. Crews was a career offender under the
guidelines and sentenced him to 225 months of imprisonment,
within the career-offender guideline range, followed by a three-
year term of supervised release. Judgment, ECF No. 266 at 1.

### C. Appeal to Court of Appeals for the District of Columbia Circuit

Mr. Crews, represented by new counsel, challenged two of
the Court's evidentiary rulings on appeal. *Crews*, 856 F.3d at
93. First, Mr. Crews alleged that the Court erred by denying his
motion for a mistrial based on graphic testimony by an emergency
room nurse about Mr. Dean's head wound, which was unrelated to
the robbery. *Id.* at 93-94, 96. Second, Mr. Crews claimed that
the Court improperly struck the testimony of his fiancée,
Vakeema Ensley, his only defense witness, after she asserted her
Fifth Amendment privilege during the government's cross-
examination. *Id.* at 93. The Court of Appeals for the District of
Columbia Circuit ("D.C. Circuit") rejected both claims and
affirmed Mr. Crews' conviction on May 9, 2017. *Id.* at 101.

While Mr. Crews' appeal to the D.C. Circuit was pending, the Supreme Court in *Johnson* invalidated the "residual clause" of the Armed Career Criminal Act (the "ACCA") as unconstitutionally vague. *See Johnson,* 576 U.S. at 606. At the time of Mr. Crews' sentencing in 2014, Section 4B1.2 of the federal Sentencing Guidelines — defining a "crime of violence" for purposes of determining whether a defendant is a career offender under § 4B1.1 — included a residual clause identical to the one invalidated in *Johnson*. *See* U.S.S.G. Suppl. App. C, amend. 798 (effective Aug. 1, 2016). The Sentencing Commission subsequently removed this clause from § 4B1.2's crime-of-violence definition in 2016. *See id.* However, in *Beckles v. United States*, 137 S. Ct. 886 (2017), the Supreme Court held that the Sentencing Guidelines, by virtue of being advisory rather than mandatory, are not subject to constitutional vagueness challenges and that "[t]he residual clause in § 4B1.2(a)(2) therefore is not void for vagueness[,]" *id.* at 892.

### D. § 2255 Motion for New Trial

On May 6, 2018, Mr. Crews, *pro se*, filed a motion under 28 U.S.C. § 2255, asserting five grounds for relief. *See* Def.'s § 2255 Mot., ECF No. 301 at 5. First, Mr. Crews contended that his trial counsel was ineffective for failing to challenge his career offender classification in the PSI Report. *Id.* at 5. Second, he argued that his trial counsel was ineffective for

purportedly waiving his speedy trial rights without his consent
during the re-trial proceedings. *Id.* at 6. Third, he asserted
that his trial and appellate counsel were both ineffective for
failing to challenge the sufficiency of evidence on his charge
for using, carrying, or possessing a firearm during a crime of
violence, a charge for which he was not convicted. *Id.* at 7-8;
*see also* Verdict, ECF No. 221 at 1. Fourth, Mr. Crews contended
that his attempted Hobbs Act robbery conviction is not a crime
of violence following the decision of the Court of Appeals for
the Tenth Circuit ("Tenth Circuit") in *United States v.
O'Connor*, 874 F.3d 1147 (10th Cir. 2017), and the Supreme
Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).[2]

---

[2] In denying Mr. Crews' § 2255 Motion, the Court construed Mr.
Crews' claim regarding *O'Connor* and *Dimaya* not as challenging
the elements of his conviction but rather as asserting that his
conviction in this case is "not a crime of violence after these
rulings." Def.'s § 2255 Mot., ECF No. 301 at 8. Since the
underlying logic of these cases is distinct from each other, the
Court considered them separately. *Compare O'Connor*, 874 F. 3d at
1158 (holding that Hobbs Act robbery did not qualify as a crime
of violence under the 2016 Sentencing Guidelines), *with Dimaya*,
138 S. Ct. at 1210 (invalidating the residual clause in the
Immigration and Nationality Act (the "INA"), 18 U.S.C. § 16(b)).
The Court considered whether Hobbs Act robbery is a crime of
violence within its analysis of whether Mr. Crews' counsel was
ineffective for not challenging his career offender
classification. *See* Mem. Op., ECF No. 360 at 38-52. The Court
considered Mr. Crews' claim regarding *Dimaya* alongside his
argument that his sentence should be reconsidered following
*Johnson v. United States*, 576 U.S. 591, 606, 135 S. Ct. 2551
(2015), (invalidating the residual clause in the ACCA), and
*United States v. Davis*, 139 S. Ct. 2319, 2551 (2019)
(invalidating the residual clause in 18 U.S.C. § 924(c)(3)(B)).
*See* Mem. Op., ECF No. 360 at 67-69.

*Id.* at 9. Finally, he disputed the government's ostensible broadening of his indictment during trial, and his counsel's failure to object to the prosecution's aiding-and-abetting theory. *Id.* at 11.

On July 25, 2018, Mr. Crews filed a supplement to his § 2255 Motion, recognizing that his vagueness challenge to the career offender guidelines (his fourth ground in his original § 2255 Motion) "must fail" following the Supreme Court's decision in *Beckles*. *See* Def.'s Suppl. § 2255 Mot., ECF No. 304 at 1. Instead, Mr. Crews asserted a new claim of ineffective assistance of appellate counsel for failing to challenge his career offender designation on appeal.[3] *See id.* at 4.

On December 15, 2018, Mr. Crews filed a Motion to Appoint Counsel, ECF No. 318, which the Court granted. Minute Order (Jan. 2, 2019). On July 28, 2019, Mr. Crews' counsel filed a supplemental brief in further support of his § 2255 claims. *See generally* Def.'s Add'l Suppl. § 2255 Mot., ECF No. 331. Mr. Crews' second supplement included two new ineffective assistance

---

[3] In its Memorandum Opinion denying Mr. Crews' § 2255 Motion, the Court treated this claim as replacing Mr. Crews' first ground in his earlier claim that his trial counsel was ineffective for failing to challenge his career offender classification in the PSI Report. The record establishes that trial counsel preserved an objection to the career offender classification for appeal, arguing "that either one or both of the prior convictions are not qualifying offenses such that he would now be a career offend[er]." Tr. of Sentencing Proceedings, ECF No. 315 at 7.

of trial counsel claims: (1) that trial counsel was ineffective for failing to request that the Court narrow its ruling striking the entire testimony of Ms. Ensley; and (2) that trial counsel was ineffective for not retaining experts in the fields of DNA testing and DNA interpretation. *Id.* at 11, 19. Mr. Crews also asked the Court to reconsider his sentence based upon the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551 (2015), and *United States v. Davis*, 139 S. Ct. 2319 (2019). *Id.* at 26.

The Court denied Mr. Crews' § 2255 Motion and its accompanying two supplements on December 7, 2021. *See* Mem. Op., ECF No. 360 at 71. The Court found that Mr. Crews did not receive ineffective assistance of trial or appellate counsel for any of his timely claims, *id.* at 36-38; and it determined that the two additional ineffective trial counsel claims raised in the second supplemental brief were untimely because they did not relate back to Mr. Crews' timely filed § 2255 Motion, *id.* at 29-34. The Court further found that equitable tolling was not warranted, as any hardships Mr. Crews had referenced did not rise to "extraordinary circumstances" preventing timely filing. *Id.* at 34-36. Finally, the Court held that the Supreme Court's decisions in *Johnson*, *Dimaya*, and *Davis* did not impact Mr. Crews' sentence, as they did not involve residual clauses in federal statutes applicable to his conviction. *Id.* at 68-69.

Subsequent to the Court's issuance of its Order and
accompanying Memorandum Opinion, *see* ECF No. 359-60; Mr. Crews
timely filed a notice of appeal to the D.C. Circuit, *see* ECF No.
361; and the D.C. Circuit referred to this Court the
determination of whether a certificate of appealability is
warranted, *see* ECF No. 363. On April 24, 2022, Mr. Crews filed
the present motion for a certificate of appealability. *See
generally* Def.'s COA Mot., ECF No. 366. On July 5, 2022, the
government filed its opposition. *See generally* United States'
Opp'n to Def.'s Mot. for Certificate of Appealability ("Gov't's
COA Opp'n Mot."), ECF No. 369. Mr. Crews has not filed a reply,
but his motion is ripe and ready for adjudication.

**III. Legal Standard**

A certificate of appealability must be issued for an
appellate court to hear an appeal from a "final order in a
proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). The
federal district court judge who rendered the judgment for which
appellate review is sought must either issue the certificate of
appealability or explain why it should not be issued. Fed. R.
App. P. 22(b)(1). Where a court denies a *habeas* claim on
procedural grounds, a certificate of appealability "should issue
when the prisoner shows, at least, that jurists of reason would
find it debatable whether the petition states a valid claim of
the denial of a constitutional right and that jurists of reason

would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for whether an application states a valid claim of the denial of a constitutional right, a certificate of appealability may issue "only if the petitioner has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, the petitioner "need not show that he should prevail on the merits. . . . Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *United States v. Mitchell*, 216 F.3d 1126, 1130 (D.C. Cir. 2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

If the court issues the certificate of appealability, it must specify which issues satisfy the substantial showing requirement. *Mitchell*, 216 F.3d at 1130. If a district court judge denies a request for a certificate of appealability, a petitioner may request one from the circuit court judge. Fed. R. App. P. 22(b)(1).

## IV. Analysis

Mr. Crews seeks to appeal the Court's denial of four of the claims brought in his § 2255 Motion and accompanying supplements: (1) his ineffective assistance of counsel claim

11

that his trial attorney failed to request that the Court narrow its ruling striking the full testimony of Ms. Ensley; (2) his ineffective assistance of counsel claim that his trial attorney failed to retain experts in the fields of DNA testing and interpretation in his defense; (3) his ineffective assistance of counsel claim that his appellate attorney failed to challenge his career offender designation on appeal with the argument that attempted Hobbs Act robbery did not qualify as a "crime of violence" under § 4B1.2 of the Sentencing Guidelines at the time of his sentencing; and (4) his argument that the Court should reconsider his sentence pursuant to the Supreme Court's decisions in *Johnson*, *Dimaya*, and *Davis*. *See* Def.'s COA Mot., ECF No. 366 at 6-28.

Since the Court denied the first two § 2255 claims on procedural grounds, it first discusses its procedural rulings on these two claims in relation to the present motion, before addressing its substantive rulings pertaining to the merits of Mr. Crews' latter two claims.

### A. Reasonable Jurists Would Not Debate that Mr. Crews' Ineffective Assistance of Trial Counsel Claims Raised in His Second Supplement Are Procedurally Time-Barred

Mr. Crews argues that reasonable jurists could debate whether the two ineffective assistance of trial counsel claims raised in his second § 2255 supplement — pertaining to the Court's striking of Ms. Ensley's testimony and the lack of DNA

experts retained in Mr. Crews' defense — should be considered timely, or alternatively, deemed eligible for equitable tolling. *See* Def.'s COA Mot., ECF No. 366 at 6-17. First, Mr. Crews argues, as he did in his second § 2255 supplement, that he timely alleged that his trial counsel was ineffective in raising the issue of Ms. Ensley's testimony, albeit "in the incorrect portion of the [original] form *pro se* motion." Def.'s COA Mot., ECF No. 366 at 6; *see also* Def.'s § 2255 Mot., ECF No. 301 at 2. He contends, as he did before, that "[a] liberal construction of [his] *pro se* Motion to Vacate should be construed in favor of allowing [his] claim[,]" given courts' tendency to apply less stringent standards to *pro se* pleadings. *See* Def.'s COA Mot., ECF No. 366 at 9 (citing *Webb v. United States Veterans Initiative*, 993 F.3d 970, 972 (D.C. Cir. 2021)).

A defendant generally must file a motion for relief under § 2255 within a year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255(f)(4). As the Court discussed in its Memorandum Opinion, Mr. Crews' judgment became final on August 7, 2017, and his deadline to file for § 2255 relief expired one year later, on August 7, 2018. Mem. Op., ECF No. 360 at 30. While Mr. Crews' original *pro se* motion and his first supplemental motion were timely filed on May 1, 2018 and July 25, 2018, respectively, Mr. Crews' second supplement,

13

submitted almost a year after his filing deadline on July 28, 2019 and raising the claim related to Ms. Ensley's testimony, was not timely. *Id.* at 30-31. This determination is not a debatable ruling.

Additionally, reasonable jurists would not debate whether Mr. Crews' improper placement of the Ms. Ensley issue in his *pro se* motion warrants liberally construing the claim as timely filed. In this motion, Mr. Crews again points to part 9(f) of his *pro se* § 2255 filing, summarizing the "Grounds Raised" on his appeal to the D.C. Circuit, as the timely source for his second supplemental claim regarding Ms. Ensley's testimony, *see* Def.'s COA Mot, ECF No. 366 at 9; even though this claim is not also reiterated in the section for the five enumerated grounds for his § 2255 Motion, *see* Def.'s § 2255 Mot., ECF No. 301 at 2, 4-10. Even acknowledging Mr. Crews' continued argument that *pro se* filings are "to be liberally construed," Def.'s COA Mot., ECF No. 366 at 8; the Court is unpersuaded that conflating the grounds for direct appeal and the grounds for collateral attack in the § 2255 motion form is sufficient in a reasonable jurist's mind to permit such liberal construction in favor of a timeliness finding, *see* Mem. Op., ECF No. 360 at 33 (reaching the same conclusion, since "Mr. Crews [did] not mention Ms. Ensley's testimony anywhere under the five grounds for his § 2255 motion").

In the alternative, Mr. Crews argues that even if the Court continues to deem this supplemental claim untimely, reasonable jurists could differ as to whether "the misplacement of the issue related to Ms. Ensley's testimony" is sufficient to entitle him to equitable tolling that would excuse the late filing. Def.'s COA Mot., ECF No. 366 at 12.

The doctrine of equitable tolling applies to the filing of § 2255 motions. *United States v. McDade*, 699 F.3d 499, 504 (D.C. Cir. 2012) (citing *Holland v. Florida*, 560 U.S. 631 (2010)). A petitioner is "entitled to equitable tolling only if he shows: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (citation and internal quotation marks omitted). "The diligence required for equitable tolling purposes is 'reasonable diligence.'" *Holland*, 560 U.S. at 653. The district court's task is to consider the facts of the case "to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief." *Id.* at 653-54. Equitable tolling for *habeas* petitioners is decided "on a case-by-case basis," *id.* at 650; and "is to be employed only sparingly" and where "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time," *United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000) (citations and internal quotation marks omitted). "To

count as sufficiently 'extraordinary,' . . . 'the circumstances that caused a litigant's delay must have been beyond [his] control'; in other words, the delay 'cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation.'" *Head v. Wilson*, 792 F.3d 102, 107 (D.C. Cir. 2015) (quoting *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014)).

Yet, contrary to the standard that the delay "cannot be a product of [a] litigant's own misunderstanding of the law," *id.*; this is the very argument Mr. Crews makes, asserting he should be entitled to equitable tolling even though his ineffective assistance claim regarding Ms. Ensley's testimony "was entered by [him] in the wrong box in the form" and was "a clerical error in the placement of the issue[,]" Def.'s COA Mot., ECF No. 366 at 9, 12. While the Court acknowledged that Mr. Crews has shown some diligence in pursuing his rights, *see* Mem. Op., ECF No. 360 at 35; he raises no new "extraordinary circumstances" that made it impossible for him to supplement his § 2255 Motion on time, and jurists of reason have rejected the idea that "*pro se* representation alone or procedural ignorance" can rise to "rare and exceptional" circumstances meriting equitable tolling, *see Johnson v. United States*, 544 U.S. 295, 311, 125 S. Ct. 1571 (2005); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006).

Mr. Crews next argues that the ineffective assistance of
counsel claim in his second supplement about his trial
attorney's failure to retain a DNA expert relates back to his
originally filed § 2255 Motion and should be deemed timely. *See*
Def.'s COA Mot., ECF No. 366 at 12-17. He contends that since he
raised ineffective assistance of counsel claims "in general
terms in the *pro se* motion," the "specific added instance of
ineffectiveness" pertaining to his trial counsel's "failure to
retain a DNA expert to challenge the government's expert" arises
from "precisely the same common core of operative facts" and
thus relates back to his original § 2255 filing. *Id.* at 16-17.
The government responds that "[r]easonable jurists would not
debate the correctness of [the] Court's ruling that raising one
allegation of ineffective assistance of counsel does not suffice
to preserve all others." Gov't's COA Opp'n Mot., ECF No. 369 at
13. The Court agrees and reiterates its prior determination that
this supplemental ineffective assistance of trial counsel claim
does not debatably relate back to those claims raised in Mr.
Crews' timely filings. *See* Mem. Op., ECF No. 360 at 33-34.

Claims filed beyond § 2255's one-year limitation period are
timely if they relate back to the timely claims, meaning that
they "arise from the same core facts as the timely filed claims,
and not [if] the new claims depend upon events separate in 'both
time and type' from the originally raised episodes." *Mayle v.*

*Felix*, 545 U.S. 644, 645, 125 S. Ct. 2562 (2005). The Federal Rules of Civil Procedure establish that "[a]n amendment to a pleading relates back to the date of the original pleading when" the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading[.]" Fed. R. Civ. P. 15(c)(1).

Courts have rejected the contention that timely alleging one ineffective assistance of counsel claim gives the petitioner unlimited leeway to file untimely amendments raising some other type of ineffective assistance claim based upon distinct conduct. *See, e.g.*, *Schneider v. McDaniel*, 674 F.3d 1144, 1151-52 (9th Cir. 2012) (allowing any general ineffective assistance of counsel claim to support "the relation back of any and every" such claim "would stand the Supreme Court's decision in *Mayle* on its head"); *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (negating the satisfaction of Rule 15's "relation back" standard "merely by raising some type of ineffective assistance in the original petition, and then amending [it] to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance"); *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000) (same conclusion regarding untimely ineffective assistance of counsel claims that "arose from separate conduct and occurrences in both time and type" from the original claims); *United States v. Palmer*, 902 F.

Supp. 2d 1, 15 (D.D.C. 2012) (same conclusion, as allowing different factual theories "linked only by a common generalized legal theory to a timely claim would undermine [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")]'s goal of finality in convictions").

Because Mr. Crews' ineffective assistance claim related to his trial counsel's failure to retain a DNA expert in his defense is based on occurrences "totally separate and distinct, in both time and type" from those raised in his timely § 2255 filings, reasonable jurists could not debate whether this claim is timely based on Rule 15's relation back test. *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) (internal quotation marks omitted).[4]

Since the Court finds that reasonable jurists could not debate whether the Court was correct in its procedural rulings as to the two claims in Mr. Crews' second supplemental briefing,

---

[4] The parties proffer differing views of *McClain v. LeGrand*, No. 3:14-cv-00269, 2019 WL 1646393 (D. Nev. Apr. 16, 2019). *Compare* Def.'s COA Mot., ECF No. 366 at 15-17, *with* Gov't's COA Opp'n Mot., ECF No. 369 at 12-13. The *McClain* court determined that an amended claim related back to an original claim as to the denial of effective assistance of counsel when both claims were united by facts pertaining to counsel's failure to advise the defendant that he could file a direct appeal and failed to file an appeal on his behalf. *McClain*, 2019 WL 1646393, at *3. The factual circumstances thus stemmed from the same "core of operative facts." *Id.* The Court reads *McClain* only to support its conclusion, as there are no facts in Mr. Crews' timely § 2255 claims that relate to his counsel's actions (or lack thereof) as to the use of DNA experts at his trial.

it need not reach the issue of whether Mr. Crews' motion states a valid claim of the denial of a constitutional right as to those two claims. *Slack*, 529 U.S. at 484. Therefore, the Court **DENIES** Mr. Crews' motion for a certificate of appealability on his ineffective assistance of trial counsel claims in his second supplement.

### B. Reasonable Jurists Would Not Debate that Mr. Crews' Appellate Counsel Was Not Ineffective for Not Challenging His Sentencing as a Career Offender

Mr. Crews reiterates the ineffective assistance of counsel claim made in his first § 2255 supplement related to his appellate counsel's failure to challenge his career offender sentencing designation on appeal. *See* Def.'s COA Mot., ECF No. 366 at 26; Def.'s Suppl. § 2255 Mot., ECF No. 304 at 4. He argues that because "newly appointed appellate counsel did not raise the issue related to the career offender status[,]" which his "trial counsel raised and preserved an objection to" on the record, there is a "significant legal claim related to [his] Sixth Amendment right to effective assistance of appellate counsel." Def.'s COA Mot., ECF No. 366 at 22, 26. At the time of Mr. Crews' sentencing in 2014, to be a career offender, a defendant had to have at least two prior felony convictions of either a crime of violence or a controlled-substance offense. U.S.S.G. § 4B1.1(a) (2014). A "crime of violence" was defined as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

*Id.* § 4B1.2(a). Subsection (a)(1) is referred to as the "elements" or "force" clause; the non-italicized portion of subsection (2) is the "enumerated offense" clause; and the italicized text is the "residual" clause. *See United States v. Carr*, 314 F. Supp. 3d 272, 274 n.1 (D.D.C. 2018).

Because Mr. Crews' ineffective assistance of appellate counsel claim was timely raised in his first supplement, the Court addressed the substantive merits of this Sixth Amendment claim in ruling on his § 2255 Motion, first determining whether attempted Hobbs Act robbery qualified as a crime of violence at the time of Mr. Crews' sentencing under the enumerated offense and residual clauses of § 4B1.2(a) of the Sentencing Guidelines.[5] *See* Mem. Op., ECF No. 360 at 40-52. After answering in the

---

[5] Because the government conceded that "Hobbs Act robbery may be committed by using force against property (and not just force against a person)" and is "broader than the elements-clause definition of a crime of violence[,]" the Court did not address whether attempted Hobbs Act robbery qualified as a crime of violence under that clause. *See* Mem. Op., ECF No. 360 at 40.

affirmative for both clauses, the Court determined that Mr. Crews' ineffective assistance of appellate counsel claim failed because "each of [his] three convictions meets the requirements for a 'crime of violence' under § 4B1.2(a)[.]"[6] *Id.* at 40.

Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). To succeed, a defendant must show both deficient performance by his attorney and prejudice. *Strickland*, 466 U.S. at 687. *Strickland* requires a party claiming ineffective assistance of trial counsel to show that: (1) "counsel's representation fell below an objective standard of reasonableness . . . [measured] under prevailing professional norms[,]" (the performance prong); and (2) the "deficiencies in counsel's performance . . . [were] prejudicial to the defense"

---

[6] The Court also addressed whether Mr. Crews' prior convictions — a 2003 robbery conviction in Maryland and a 2005 carjacking conviction in Maryland — qualified as crimes of violence under the 2014 Sentencing Guidelines. *See* Mem. Op., ECF No. 360 at 52-64. It determined that the robbery conviction was a crime of violence under the residual clause of § 4B1.2(a), *see id.* at 52-58; and that the carjacking conviction was a crime of violence under the elements and residual clauses of § 4B1.2(a), *see id.* at 58-64. In the present motion, Mr. Crews does not challenge the Court's classification of these two convictions as crimes of violence, instead focusing on his attempted Hobbs Act robbery conviction. *See* Def.'s COA Mot., ECF No. 366 at 18-22. The Court thus only addresses Mr. Crews' ineffective assistance of appellate counsel claim in relation to whether it is debatable that attempted Hobbs Act robbery qualified as a crime of violence for purposes of Mr. Crews' career offender designation at the time of sentencing.

(the prejudice prong). *Id.* at 688, 692. To establish deficient
performance, the moving party must show "specific errors made by
trial counsel." *United States v. Cronic*, 466 U.S. 648, 666, 104
S. Ct. 2039 (1984). To establish prejudice, the moving party
must demonstrate "a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different." *Strickland*, 466 U.S. at 694.
"Judicial scrutiny of counsel's performance must be highly
deferential[,]" and the defendant must overcome "a strong
presumption that counsel's conduct falls within the wide range
of reasonable professional assistance." *Id.* at 689.

The standard for evaluating claims of ineffective
assistance of appellate counsel is the same as that for
evaluating claims of ineffective assistance of trial counsel.
*See Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746 (2000);
*United States v. Agramonte*, 366 F. Supp. 2d 83, 86 (D.D.C.
2005). "[A]ppellate counsel who files a merits brief need not
(and should not) raise every nonfrivolous claim, but rather may
select from among them in order to maximize the likelihood of
success on appeal." *Robbins*, 528 U.S. at 288; *see also*
*Agramonte*, 366 F. Supp. 2d at 86-87 ("It is settled that a
criminal defendant has no constitutional right to have appellate
counsel raise every nonfrivolous issue that the defendant
requests."). Although it is "possible to bring a *Strickland*

claim based on counsel's failure to raise a particular claim" on appeal, "it is difficult to demonstrate that counsel was incompetent" on that ground. *Robbins*, 528 U.S. at 288.

To succeed on his claim of ineffective assistance of appellate counsel, Mr. Crews must establish "a reasonable probability" that attempted Hobbs Act robbery did *not* qualify as a crime of violence under any of the three available definitions in § 4B1.2(a) of the 2014 Guidelines: (1) the "elements" or "force" clause;[7] (2) the "enumerated offense" clause;[8] or (3) the "residual" clause.[9] *See Strickland*, 466 U.S. at 694. In assessing

---

[7] Under the elements clause, the Court looks "to the elements of the crime to determine whether, by its terms, commission of the crime inherently (*i.e.,* categorically) requires the kind of force" that is contemplated in § 4B1.2(a). *United States v. Brown*, 892 F.3d 385, 402 (D.C. Cir. 2018).

[8] The inquiry under the enumerated offense clause compares the elements of the conviction with the elements of any potentially applicable § 4B1.2(a)(2) enumerated offenses to see if they match. *See Mathis v. United States*, 579 U.S. 500, 505-06, 136 S. Ct. 2243 (2016). If the Guidelines do not supply a definition of the enumerated offense, the Court determines the generic definition by considering "a wide range of sources . . . , including federal and state statutes, the Model Penal Code, dictionaries, and treatises." *United States v. O'Connor*, 874 F.3d 1147, 1151 (10th Cir. 2017). If the scope of conduct covered by the defendant's crime of conviction is broader than what the enumerated offense definition would cover, the crime of violence sentencing enhancement is not valid under the enumerated offense clause. *See United States v. Titties*, 852 F.3d 1257, 1265-66 (10th Cir. 2017).

[9] The inquiry under the residual clause remains categorical, considering "whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of th[e] particular offender." *James v. United States,* 550 U.S. 192, 202, 127 S. Ct. 1586 (2007).

whether an offense is a crime of violence, courts use a "categorical approach," focusing on "how the law defines the offense" and not on how "an individual offender might have committed it on a particular occasion." *United States v. Haight*, 892 F.3d 1271, 1279 (D.C. Cir. 2018) (quoting *Begay v. United States*, 553 U.S. 137, 141, 128 S. Ct. 1581 (2008)). If the statute on which the conviction was based defines the offense in a way that includes, at its margins, conduct beyond what the guidelines contemplate as a crime of violence, the offense is not categorically a crime of violence. *See id.* In other words, the question is whether "the least of th[e] acts criminalized . . . are encompassed by the generic federal offense." *United States v. Carr*, 946 F.3d 598, 601 (D.C. Cir. 2020) (citing *Moncrieffe v. Holder*, 569 U.S. 184, 191, 135 S. Ct. 1678 (2013) (internal quotation marks omitted)).

1. **Reasonable Jurists Would Not Debate that Attempted Hobbs Act Robbery Qualified as a "Crime of Violence" Under § 4B1.2(a) of the Sentencing Guidelines at the Time Mr. Crews Was Sentenced**

Mr. Crews contends that "a certificate of appealability should issue related to the Hobbs Act, residual clause claims, and career offender claims." Def.'s COA Mot., ECF No. 366 at 22. He argues that reasonable jurists could debate whether attempted Hobbs Act robbery qualifies as a crime of violence because of an amendment to the Sentencing Guidelines that occurred *after* his

sentencing, which he claims should "be applied retroactively."
*Id.* at 20. The government notes that Mr. Crews never specifies
which amendment he is referring to, though is presumably correct
in identifying U.S.S.G. Suppl. App. C, amend. 798 (effective
Aug. 1, 2016) ("Amendment 798" or "U.S.S.G. Amend. 798") as the
amendment in question. *See* Gov't's COA Opp'n Mot., ECF No. 369
at 14. Mr. Crews contends that a retroactive application of
Amendment 798, supported by the Tenth Circuit's 2017 decision in
*O'Connor*[10] and the Supreme Court's 2016 decision in *Welch v.
United States*, 578 U.S. 120, 136 S. Ct. 1257 (2016),[11] could lead
"reasonable jurists [to] have differing opinions concerning the
application of the guidelines to a particular group of
offenses[,]" *i.e.*, the Guidelines' *present* crime-of-violence
definition applied to Mr. Crews' attempted Hobbs Act robbery
conviction. Def.'s COA Mot., ECF No. 366 at 21-22.

The government responds that "[j]urists of reason would not
find it debatable whether [Mr. Crews'] argument states a valid
claim of the denial of a constitutional right" because he

---

[10] *See supra* note 2 (discussing *O'Connor*'s holding that Hobbs Act
robbery is not a crime of violence under the 2016 Guidelines).
[11] In *Welch*, the Supreme Court held — pursuant to the framework
of *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989) "for
determining whether a new rule applies to cases on collateral
review" — that its prior decision in *Johnson v. United States* to
invalidate the ACCA's residual clause as unconstitutionally
vague was a substantive decision with retroactive effect. *Welch
v. United States*, 578 U.S. 120, 128-30, 136 S. Ct. 1257 (2016).

"conflates not only" decisions applying the ACCA with those applying § 4B1.2(a), "but also the enumerated-offense and residual clauses of § 4B1.2(a)(2)." Gov't's COA Opp'n Mot., ECF No. 369 at 14. The government contends that *Welch* "has [no] bearing on whether Amendment 798 applies retroactively[,]" as it utilized the *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989) framework for assessing the retroactive effect of new rules of criminal procedure, which is inapplicable to determining the retroactive effect of amendments to the Guidelines. *See id.* at 14-16. The government also argues that *O'Connor* does not aid Mr. Crews' argument for retroactivity, as the Tenth Circuit did not: (1) apply Amendment 798's definition of "extortion" retroactively under the enumerated offense clause; or (2) consider whether attempted Hobbs Act robbery was a crime of violence under § 4B1.2(a)(2)'s former residual clause, which the government argues leads Mr. Crews to "ma[k]e the requisite showing as to neither [clause]." *Id.* at 16-18.

### a. Reasonable Jurists Would Not Debate that Amendment 798 to the Sentencing Guidelines, Enacted After Mr. Crews Was Sentenced, Does Not Apply to Him Retroactively

Courts generally must use the Sentencing Guidelines in effect at the time of sentencing. *United States v. Green*, 952 F.2d 414, 416 (D.C. Cir. 1991); *United States v. Smaw*, 22 F.3d 330, 333 (D.C. Cir. 1994) (noting the Sentencing Commission's directive to courts to "use the Guidelines Manual in effect on

the date that the defendant is sentenced" except in "specified exceptional cases") (citing U.S.S.G. § 1B1.11(a)). However, the Supreme Court has determined "that the policy statement in § 1B1.10 of the Sentencing Guidelines governs whether changes to the Guidelines may be given retroactive effect." *United States v. Williams*, 495 F. App'x 96, 97 (D.C. Cir. 2013) (citing *Dillon v. United States*, 560 U.S. 817, 827, 130 S. Ct. 817 (2010)). One retroactive circumstance is when an amendment to the Guidelines is deemed a "clarification" as opposed to a "substantive alteration." *Smaw*, 22 F.3d at 333. A clarifying amendment "changes nothing concerning the legal effect of the guidelines, but merely clarifies what the Commission deems the guidelines to have already meant[,]" and is therefore applied retroactively, while a substantive change is not. *Id.*; *accord United States v. Bankston*, 901 F.3d 1100, 1104 (9th Cir. 2018).

In distinguishing between clarifying and substantive amendments, courts may look to whether the amendment is listed in § 1B1.10(d) of the Guidelines, which lists amendments the Sentencing Commission intended to apply retroactively. *See* U.S.S.G. § 1B1.10(d); *see also United v. Amaya-Ortiz*, 296 F. Supp. 3d 21, 25-26 (D.D.C. 2017) (declining to apply an amendment retroactively because the Commission did not designate it as one eligible for retroactive effect). A court may also consider whether the Commission "characterized the amendment as

28

a clarification" and "whether the amendment resolves a circuit conflict," both of which tip in favor of a clarifying amendment as opposed to a substantive change. *See Bankston*, 901 F.3d at 1104; *United States v. Ynfante*, 78 F.3d 677, 682 n.4 (D.C. Cir. 1996) (considering whether the Commission described an amendment as a "mere clarification").

The Sentencing Commission made two changes to the Guidelines in Amendment 798 relevant to Mr. Crews' arguments. First, following the Supreme Court's decision in *Johnson* striking the ACCA's residual clause, the Commission removed § 4B1.2(a)(2)'s identical residual clause. *See* U.S.S.G. Amend. 798 (determining that the residual clause "implicates many of the same concerns cited by the Supreme Court in *Johnson*, and, as a matter of policy, amend[ing] § 4B1.2(a)(2) to strike the clause"). Second, the Commission provided a definition for the term "extortion" in the Guidelines' crime-of-violence definition, later used in *O'Connor*'s crime-of-violence analysis of Hobbs Act robbery under the enumerated offense clause. *Id.*; *O'Connor*, 874 F.3d at 1150. Under Amendment 798, "extortion" is defined as "obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury." U.S.S.G. Amend. 798. *O'Connor* referred to this definition as "Guidelines extortion" to "distinguish it from the 'generic extortion' definition courts

used before Amendment 798." *O'Connor*, 874 F.3d at 1150; *cf.*
*United States v. Moore*, 149 F. Supp. 3d 177, 181 (D.D.C. 2016)
(stating that "[t]he Supreme Court has indicated that the
generic definition of extortion is obtaining something of value
from another with his consent induced by the wrongful use of
force, fear, or threats") (citation and internal quotation marks
omitted). The Commission's purpose in supplying this extortion
definition in the amendment was to "narrow[] the generic
definition of extortion by limiting the offense to those having
any element of force or an element of fear or threats 'of
physical injury,' as opposed to non-violent threats such as
injury to reputation." U.S.S.G. Amend. 798.

    While the D.C. Circuit has yet to consider whether
Amendment 798 is a clarifying or substantive change, the Court
concludes, based on persuasive authority, that reasonable
jurists would not debate that Amendment 798 is a substantive
change that does not apply retroactively. First, it is not
listed in § 1B1.10(d) of the Guidelines as an amendment that the
Commission intended to have retroactive effect. *See* U.S.S.G. §
1B1.10(d); *see also United States v. Adkins*, 883 F.3d 1207, 1212
(9th Cir. 2018) (noting that the Commission "has not used its
delegated authority to make Amendment 798 retroactive, as [it]
has done for a list of other amendments"). Second, Amendment 798
describes the above changes using the following verbs: (1)

"[r]emoving the residual clause" and "strik[ing]" it, and (2) "narrow[ing] the generic definition of extortion by limiting the offense." U.S.S.G. Amend. 798. The actions of "removing" or "striking" a clause and "narrowing" or "limiting" an offense are not descriptions of clarifications but instead are substantive alterations changing the legal effect of the Guidelines and are therefore not applied retroactively. *See Bankston*, 901 F.3d at 1105 (concluding that "[t]he Commission's language thus reflects a substantive change . . . not a clarifying one"); *Smaw*, 22 F.3d at 333.[12] Moreover, nowhere in Amendment 798 did the Commission "specify that it was resolving a circuit split in making the change." *Adkins*, 883 F.3d at 1212; *Bankston*, 901 F.3d at 1104. Instead, Amendment 798 entails the wholesale elimination of a clause and the provision of an entirely new definition, which "bespeak[] . . . substantive alteration" rather than clarification. *Smaw*, 22 F.3d at 333.

Mr. Crews' reliance on the Supreme Court's decisions in *Welch* and *Johnson* to argue for the retroactivity of Amendment 798 is therefore misguided. *See* Def.'s COA Mot., ECF No. 366 at 21. Not only was a different statute at issue in those cases (the ACCA), *see* Mem. Op., ECF No. 360 at 68-69; but also in

---

[12] Mr. Crews' argument that retroactivity should apply "[w]hen a revision reduces the Guidelines range for a given offense" is not encompassing of Amendment 798's actual revisions that are at issue here. *See* Def.'s COA Mot., ECF No. 366 at 20.

*Welch*, the Supreme Court was analyzing *Johnson*'s new constitutional rule of criminal procedure under *Teague*, not an amendment to the Sentencing Guidelines, which is evaluated under its own retroactivity framework. *See Welch*, 578 U.S. at 128-29. As *Welch* noted, *Teague* creates a "general bar on retroactivity for procedural rules[,]" only recognizing retroactivity for "[n]ew substantive rules" and "new 'watershed rules of criminal procedure' . . . 'implicating fundamental fairness and accuracy of the criminal proceeding[.]'" *Id.* at 128. In contrast, the test for the retroactivity of amendments to the Guidelines is nearly the reverse, where it is not substantive but clarifying amendments that are given retroactive effect. *See Smaw*, 22 F.3d at 333; *Amaya-Ortiz*, 296 F. Supp. 3d at 25-26.

To support its conclusion that reasonable jurists would not debate that Amendment 798 is not retroactive, below the Court explains why it is not debatable that: 1) the amendment's deletion of the residual clause in § 4B1.2(a)(2) is not retroactive; and 2) the amendment's extortion definition, impacting the analysis of Hobbs Act robbery under the enumerated offense clause, is also not retroactive. Mr. Crews appears to mix his arguments regarding these two clauses together. *See* Def.'s COA Mot., ECF No. 366 at 18-22. Since "[n]othing prohibits an amendment from being clarifying in part and substantive in part[,]" *United States v. Jackson*, 901 F.3d 706,

709 (6th Cir. 2018); the Court, for the reasons below, concludes that reasonable jurists could not debate whether Mr. Crews has shown "a reasonable probability" that either change would apply retroactively so as to result in his attempted Hobbs Act robbery conviction *not* qualifying as a crime of violence under the 2014 Sentencing Guidelines, *Strickland*, 466 U.S. at 694.

First, regarding § 4B1.2(a)(2)'s former residual clause that existed at the time of Mr. Crews' sentencing, no court to analyze the issue has retroactively applied the deletion of the clause so as to negate a prior crime-of-violence determination during sentencing. *See, e.g.*, *Adkins*, 883 F.3d at 1211 (holding that the deletion of § 4B1.2(a)'s residual clause does not have retroactive effect); *Jackson*, 901 F.3d at 710 (finding that the "deletion of the residual clause amount[ed] to a substantive change" by "making a new, clearer law" thus "leaving untouched our prior decision that Jackson's attempted robbery conviction counts as a crime of violence"); *United States v. Gonzalez*, 714 F. App'x 367, 370-71 (5th Cir. 2017) (finding that Amendment 798's deletion of the residual clause "has none of the characteristics of a change that, according to our case law, is retroactive rather than substantive and thus prospective" and holding the district court did not err in not considering the amendment); *United States v. Craig*, 706 F. App'x 545, 550-51 (11th Cir. 2017) (classifying Amendment 798's elimination of the

residual clause a "substantive, rather than clarifying" change
and rejecting consideration of it on appeal); *United States v.
Raymonde*, 858 F. App'x 263, 265-66 (10th Cir. 2021) (finding it
not "reasonably debatable that the district court violated
Raymonde's due process rights when it relied on the residual
clause in identifying a second qualifying crime of violence[,]"
since Amendment 798 is "not entitled to retroactive benefit");
*United States v. Wurie*, 867 F.3d 28, 37 (1st Cir. 2017)
(refusing to remand for resentencing given that Amendment 798's
elimination of the residual clause was a "non-retroactive
substantive amendment[] to the Guidelines" post-dating the
defendant's sentencing).[13]

Contrary to Mr. Crews' reliance on *Welch*, several of these
courts have found *Welch* to be "persuasive evidence that removal
of the residual clause is a substantive change to the Sentencing
Guidelines, not a clarifying one[,]" as *Welch* held that "*Johnson*
changed the *substantive reach* of the [ACCA by] altering the

---

[13] In *United States v. Frates*, 896 F.3d 93 (1st Cir. 2018), the
First Circuit remanded to allow reconsideration of the
defendant's career offender status following the removal of the
residual clause but only because Amendment 798 was enacted *while*
the defendant's appeal was pending. *Id.* at 102. The court
acknowledged this "quirk" for defendants who were sentenced
pursuant to § 4B1.2(a)'s residual clause prior to the existence
of Amendment 798 and whose appeals were pending when the
amendment took effect. *Id.* at 97. This "quirk" is not the case
for Mr. Crews, who was sentenced in 2014, long before Amendment
798 took effect on August 1, 2016.

range of conduct or the class of persons that the [Act] punishes." *Adkins*, 883 F.3d at 1213 (quoting *Welch*, 578 U.S. at 129) (internal quotation marks omitted). And since *Johnson* altered the ACCA by eliminating "the identically-worded residual clause" to that in § 4B1.2(a)(2), it follows that Amendment 798 "changed the 'substantive reach' of the Sentencing Guidelines," thus prohibiting any retroactive effect. *Id.*; *see also Jackson*, 901 F.3d at 710 (same conclusion). Therefore, reasonable jurists could not debate that attempted Hobbs Act robbery qualified as a crime of violence under the then-existing residual clause of § 4B1.2(a)(2) at the time Mr. Crews was sentenced.[14] *See United*

---

[14] As the government notes, *see* Gov't's COA Opp'n Mot., ECF No. 369 at 15; Courts of Appeal in several circuits have concluded that the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886, foreclosed the possibility of retroactively extending *Johnson*'s holding to the former residual clause in § 4B1.2(a), *see, e.g.*, *United States v. Adkins*, 883 F.3d 1207, 1213 (9th Cir. 2018) ("*Beckles* settled that *Johnson* does not apply to the Sentencing Guidelines."); *United States v. Wurie*, 867 F.3d 28, 33 (1st Cir. 2017) ("[T]he Supreme Court clarified in *Beckles* that *Johnson* [] does not apply to section 4B1.2(a) of the Guidelines[.]"); *Atkinson v. United States*, No. 17-1421, 2017 WL 8793327, at *1-2 (6th Cir. Oct. 23, 2017) (discussing the defendant's concession that "*Beckles* foreclosed his *Johnson* claim" as applied to his career-offender designation under the Guidelines); *Delgado v. United States*, 725 F. App'x 914, 916 (11th Cir. 2018) (noting *Beckles*' conclusion that "the holding in *Johnson* did not extend to the 'residual' clause formerly in U.S.S.G. § 4B1.2(a)"); *United States v. Thyberg*, 684 F. App'x 733, 736 (10th Cir. 2017) ("Since [the defendant] filed his [certificate of appealability] application, the Supreme Court held [in *Beckles* that] *Johnson* does not apply to the Sentencing Guidelines, including § 4B1.2(a)(2)."). Mr. Crews does not proffer arguments concerning the effect of *Beckles* on any

*States v. Eason*, 953 F.3d 1184, 1195 (11th Cir. 2020) (noting that prior to Amendment 798 in 2016, "[t]he residual clause easily encompassed offenses like Hobbs Act robbery").

Second, no court to analyze the issue has retroactively applied Amendment 798's added definition of extortion to negate a prior crime-of-violence determination under the enumeration clause of § 4B1.2(a)(2). For example, the Court of Appeals for the Ninth Circuit has held that "Amendment 798's alteration of the definition of extortion in the Guidelines' 'crime of violence' section is not retroactive." *See Bankston*, 901 F.3d at 1105 ("Because Bankston was sentenced before August 1, 2016, the pre-amendment generic extortion definition applies[.]").

Contrary to Mr. Crews' arguments, *O'Connor* supports the position that the Guidelines' 2016 definition of extortion, or "Guidelines extortion," does not apply retroactively. In *O'Connor*, the Tenth Circuit explained that "[t]he Guidelines were amended in 2016 to include a definition of extortion that is narrower than the [previously utilized] generic definition," and held that pursuant to this new definition, Hobbs Act robbery is not a crime of violence under the enumerated clause of § 4B1.2(a) because "it is broader than both generic robbery and Guidelines extortion, which are limited to threats to a person."

---

retroactive effect of Amendment 798, so the Court does not discuss this topic further.

874 F.3d at 1152-53. In reaching this conclusion, the Tenth
Circuit found that the Guidelines' 2016 definition of extortion
is "ambiguous" and applied the rule of lenity to resolve the
ambiguity in Mr. O'Connor's favor as "excluding injury and
threats of injury to property." *Id.* at 1157-58.

While the Tenth Circuit vacated Mr. O'Connor's sentence and
remanded for resentencing in light of its holding, of particular
significance is the fact that Mr. O'Connor was sentenced on
October 4, 2016, a little over two months *after* Amendment 798
took effect on August 1, 2016. *See* Brief of Appellee at 2,
*United States v. O'Connor*, 874 F.3d 1147 (10th Cir. 2017) (No.
16-3300). Therefore, *O'Connor* does not support allowing the
retroactive application of Guidelines extortion to negate the
prior crime-of-violence designation that occurred in Mr. Crews'
sentencing in 2014 pursuant to the generic definition of
extortion applicable at the time. Mr. Crews himself admits that
"[t]he standard in *O'Conn[o]r* was added by the Sentencing
Commission two years after [he] was sentenced[,]" Def.'s COA
Mot., ECF No. 366 at 21; and he has proffered no caselaw to
support reasonable jurists debating that *O'Connor* could be
applied retroactively to defendants sentenced prior to August 1,
2016, *see generally id.* The Court thus stands by its prior
determination that "*O'Connor* can be distinguished since the
standard in place *at the time* Mr. Crews was convicted included

threats to property" and its holding that "generic extortion, *at the time of Mr. Crews' sentencing*, covered any Hobbs Act robbery offense not encompassed by the elements clause." *See* Mem. Op., ECF No. 360 at 44 (emphasis added).[15]

      **b. Reasonable Jurists Would Not Debate that the "Crime of Violence" Definition Under § 4B1.2(a) of the Sentencing Guidelines at the Time Mr. Crews Was Sentenced Included Attempted Hobbs Act Robbery**

The parties also dispute whether a certificate of appealability should issue related to Mr. Crews' ineffective assistance of appellate counsel claim as to the Court's

---

[15] In further support of the Court's determination that *O'Connor* did not apply Amendment 798's definition of "extortion" *retroactively* under the enumerated offense clause are several other cases *prospectively* applying this change in definition following the amendment's August 1, 2016 effective date. *See, e.g.*, *United States v. Green*, 996 F.3d 176, 182-84 (4th Cir. 2021) (using, for a defendant sentenced in 2019, the Guidelines' 2016 definition of extortion to hold "like five other circuits before us," that Hobbs Act robbery is "not a crime of violence under the career offender provision of the Sentencing Guidelines" because "it extends to a broader range of conduct . . . than § 4B1.2(a)(1)'s force clause or the offenses of robbery and extortion enumerated in § 4B1.2(a)(2)"); *United States v. Camp*, 903 F.3d 594, 604 (6th Cir. 2018) ("[W]e join the Tenth Circuit in holding [for a defendant sentenced in 2017] that Hobbs Act robbery is not a crime of violence under the Guidelines" because it "criminalizes conduct that extends beyond both generic robbery and Guidelines extortion[.]"); *United States v. Rodriguez*, 770 F. App'x 18, 23 (3d Cir. 2019) (same for a defendant also sentenced in 2017); *United States v. Eason*, 953 F.3d 1184, 1194-95 (11th Cir. 2020) (same for a defendant sentenced on August 5, 2016); *Bridges v. United States*, 991 F.3d 793, 802-03 (7th Cir. 2021) (same for a defendant sentenced in 2018); *United States v. Edling*, 895 F.3d 1153, 1157-58 (9th Cir. 2018) (same for a defendant sentenced in October 2016 pursuant to Nevada's robbery statute).

conclusion that "attempted Hobbs Act [r]obbery[, like completed Hobbs Act robbery,] satisfies the enumerated offense clause" of § 4B1.2(a). *See* Mem. Op., ECF No. 360 at 44-45; Def.'s COA Mot., ECF No. 366 at 24-26; Gov't's COA Opp'n Mot., ECF No. 369 at 18-21.

Mr. Crews relies on the D.C. Circuit's decisions in *United States v. Price*, 990 F.2d 1367 (D.C. Cir. 1993) and *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018) to argue that his conviction for "'attempted' interference with commerce by robbery[,] . . . coupled with [his] trial counsel's specific objection to [his] career offender status unquestionably should have put appellate counsel on notice to brief a significant legal issue that was specifically raised in the trial court." Def.'s COA Mot., ECF No. 366 at 24. In *Price,* the court held that the Sentencing Commission exceeded its authority under 18 U.S.C. § 994(h) by including *conspiracies to commit* controlled substance offenses in Application Note 1 to § 4B1.2,[16] *i.e.,* allowing such conspiracies to factor into the career offender designation analysis was improper when § 994(h) "plainly fail[ed] to reach" them. 990 F.2d at 1368, 1370. Mr. Crews argues that the same logic should be taken from conspiracies to

---

[16] At the time of *Price*, Application Note 1 to § 4B1.2 stated that controlled substance offenses included "the offenses of aiding and abetting, *conspiring*, and attempting to commit such offenses." *Price*, 990 F.2d at 1368 (emphasis in the original).

commit controlled substance crimes and applied to attempt offenses qualifying as crimes of violence, such that his appellate counsel should have been on notice to brief the legal issue. *See* Def.'s COA Mot., ECF No. 366 at 24-25.

Mr. Crews also relies on one line in *Winstead,* in which the court held that the commentary to the career offender guidelines impermissibly expanded the definition of a "controlled substance offense" to include attempts to commit such offenses (otherwise known as inchoate offenses), 890 F.3d at 1091-92;[17] to contend that his appellate counsel should have argued on appeal that § 4B1.2 does not include *attempted* crimes of violence, *see* Def.'s COA Mot., ECF No. 366 at 24 n.2 (quoting *Winstead* that the Commission's "drafters declined to include attempt despite its presence elsewhere"). The government responds that neither *Price* nor *Winstead* supports Mr. Crews' arguments, and the Court agrees, standing by its original conclusion that its decision "is not altered by the fact that Mr. Crews was convicted of *attempted* Hobbs Act [r]obbery." Mem. Op., ECF No. 360 at 44.

---

[17] *Winstead* analyzed whether the commentary to § 4B1.2, stating that a controlled substance offense "include[s] the offenses of aiding and abetting, conspiring, and *attempting* to commit such offenses" was improper as compared to the Guidelines themselves. 890 F.3d at 1089-91. It concluded that "Section 4B1.2(b) presents a very detailed 'definition' of controlled substance offense that clearly excludes inchoate offenses." *Id.* at 1091.

The Court finds that reasonable jurists would not debate
that the crime-of-violence definition under § 4B1.2(a) at the
time of Mr. Crews' sentencing included attempt offenses like
attempted Hobbs Act robbery. Application Note 1 to § 4B1.2
specifically states that a crime of violence "include[s] the
offenses of aiding and abetting, conspiring, and *attempting to
commit* such offenses." U.S.S.G. § 4B1.2, cmt., application n.1
(emphasis added). This is clear textual evidence that neither
*Price* nor *Winstead* disputes. *Price*'s holding was also narrow,
limited only to invalidating conspiracies to commit controlled
substance offenses under § 994(h), 990 F.2d at 1368-70; and it
was in fact superseded by the Commission's 1998 amendment of §
4B1.1 to include inchoate crimes, *see* U.S.S.G. § 4B1.2 (defining
controlled substance offenses, like crimes of violence, to
include "aiding and abetting, conspiring, and attempting to
commit such offenses"); *see also United States v. Powell*, 161
F.3d 738, 739 (D.C. Cir. 1998) (discussing this 1998 amendment
that followed "this court's decision in *Price*").

Neither does *Winstead*'s holding support Mr. Crews'
ineffective assistance of appellate counsel claim. *Winstead*
specifically analyzed the definition of a "controlled substance
offense" under § 4B1.2(b) and distinguished Application Note 1's
guidance with respect to whether crimes of violence include
inchoate offenses. *See Winstead*, 890 F.3d at 1091 n.12 ("We

41

address only the scope of the definition of 'controlled

substance offense.'"). The *Winstead* court noted in relation to

crimes of violence that "the Commission showed within § 4B1.2

itself that it knows how to include attempted offenses when it

intends to do so." *Id.* It thereafter distinguished "the

inclusion of attempt in § 4B1.2's definition of 'crime of

violence'" from the notable absence of attempt in the controlled

substance offense definition, noting "the drafters declined to

include attempt" in the latter despite its presence in the

former. *Id.* at 1092. As the government notes, "[t]his difference

is significant," Gov't's COA Opp'n Mot., ECF No. 369 at 20; and

the Court rejects Mr. Crews' assertion that "the principle

remains the same" despite his case involving a crime of violence

and *Winstead* and *Price* involving controlled substance offenses,

*see* Def.'s COA Mot., ECF No. 366 at 25.[18]

　　Mr. Crews provides no other caselaw to support his claim

that appellate counsel should have been on notice about briefing

an alleged difference in the Court's treatment between attempted

---

[18] The Court does not address the government's arguments
concerning *Winstead*'s retroactivity, as Mr. Crews raises no
arguments on this point. *See* Gov't's COA Opp'n Mot., ECF No. 369
at 19-20. The Court noted in its Memorandum Opinion denying Mr.
Crews' § 2255 Motion that "even if *Winstead* applied
retroactively, the elements clause specifically covers offenses
that have 'as an element the use, *attempted use*, or threatened
use of physical force.'" Mem. Op., ECF No. 360 at 45 (citing §
4B1.2(a) (emphasis added)). Mr. Crews does not now raise any
arguments disputing this conclusion.

and completed Hobbs Act robbery for purposes of his career offender designation. The Court thus reiterates its conclusion that "[a]s for attempted extortion, at the time of Mr. Crews' sentencing, the inclusion of attempt offenses in the commentary to § 4B1.2 supported the assumption that attempted enumerated offenses were crimes of violence" and that therefore "attempted Hobbs Act robbery satisfies the enumerated offense clause."[19] Mem. Op., ECF No. 360 at 45. Moreover, the Supreme Court has held that Guidelines commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38, 113 S. Ct. 1913 (1993). Therefore, Application Note 1 to § 4B1.2, being not inconsistent with the Guideline, settles for reasonable jurists that a crime of violence includes an attempt to commit such an offense. *See* U.S.S.G. § 4B1.2, cmt., application n.1.

Notwithstanding the above failures, Mr. Crews contends that "[a]t a minimum," he is entitled to "a hearing to address the

---

[19] The government correctly notes that Mr. Crews' argument surrounding *Price* and *Winstead* solely focuses on the Court's conclusion that attempted Hobbs Act robbery at the time of Mr. Crews' sentencing qualified as a crime of violence under § 4B1.2(a)'s enumerated offense clause and does not address the Court's dual holding that attempted Hobbs Act robbery also satisfied the former residual clause of § 4B1.2(a) that existed in 2014 when Mr. Crews was sentenced. *See* Govt's COA Opp'n Mot., ECF No. 369 at 19. Mr. Crews proffers no arguments to that effect regarding attempted versus completed Hobbs Act robbery.

conscious decision of appellate counsel to not pursue [this]
nonfrivolous, preserved claim on appeal[.]" Def.'s COA Mot., ECF
No. 366 at 26. However, a district court is entitled "to deny
summarily a Section 2255 motion without holding an evidentiary
hearing when 'the motion and the files and records of the case
conclusively show that the prisoner is entitled to no relief.'"
*Agramonte*, 366 F. Supp. 2d at 85 (quoting 28 U.S.C. § 2255).
Moreover, "a district judge's decision not to hold an
evidentiary hearing before denying a § 2255 motion is generally
respected as a sound exercise of discretion" when, as here, "the
judge denying the § 2255 motion also presided over the trial in
which the petitioner claims to have been prejudiced." *United
States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996).

Contrary to Mr. Crews' assertions, nothing in *United States
v. Agramonte*, 366 F. Supp. 2d 83 (D.D.C. 2005) supports
concluding that reasonable jurists would debate whether Mr.
Crews is entitled to an evidentiary hearing to address his
appellate counsel's decision not to appeal his career offender
designation. *See* Def.'s COA Mot., ECF No. 366 at 26 (contending
that a hearing was necessary "to complete the record"). Although
appellate counsel in *Agramonte* submitted an affidavit discussing
his decision not to pursue certain issues on appeal, this
affidavit was not discussed during an evidentiary hearing;
rather, the D.C. Circuit determined that the defendant "failed

to present a creditable basis on which either relief should be granted or a hearing need be held." 366 F. Supp. 2d at 85-87. Such is the case here, because, for the aforementioned reasons, reasonable jurists would not debate that Mr. Crews' appellate counsel provided effective assistance of counsel given Mr. Crews' failure to establish a reasonable probability that attempted Hobbs Act robbery would *not* qualify as a crime of violence under any of § 4B1.2(a)'s three clauses at the time of his sentencing.

Because Mr. Crews has not made "a substantial showing of the denial of a constitutional right," the Court **DENIES** his motion for a certificate of appealability on his ineffective assistance of appellate counsel claim. *See* 28 U.S.C. § 2253(c)(2).

### C. Reasonable Jurists Would Not Debate that Mr. Crews' Sentence Should Not Be Reconsidered Based Upon the Supreme Court's Rulings in *Johnson*, *Dimaya*, and *Davis*

Finally, Mr. Crews argues that reasonable jurists could debate the application of the Supreme Court's rulings in *Johnson*, *Dimaya*, and *Davis* to his sentence, particularly regarding whether the former residual clause of § 4B1.2(a)(2) is void for vagueness. *See* Def.'s COA Mot., ECF No. 366 at 28; *Johnson*, 576 U.S. at 606 (invalidating residual clause in the ACCA, 18 U.S.C. § 924(e)(2)(B)); *Dimaya*, 138 S. Ct. at 1210 (invalidating residual clause in the INA, 18 U.S.C. § 16(b));

*Davis*, 139 S. Ct. at 2319 (invalidating residual clause in 18 U.S.C. § 924(c)(3)(B)). In previously rejecting this argument, the Court determined that "*Johnson, Dimaya* and *Davis*, all of which overturned the residual clause in federal statutes, are easily distinguished since they involved statutes that are not at issue in Mr. Crews's conviction." Mem. Op., ECF No. 360 at 68-69. The Court then distinguished the Sentencing Guidelines from the statutes at issue in *Johnson, Dimaya* and *Davis*, noting that "by virtue of being advisory," the Guidelines "do not implicate the twin concerns underlying vagueness doctrine — providing notice and preventing arbitrary enforcement." *Id.* at 69 (quoting *Beckles*, 137 S. Ct. at 894). So even though the former residual clause in § 4B1.2(a)(2) was identically worded to the ACCA's residual clause analyzed in *Johnson*, the Court noted *Beckles*' holding that the Guidelines are "not void for vagueness." *Id.* (citing *Beckles*, 137 S. Ct. at 895).

The only new challenge Mr. Crews brings to the Court's conclusion is in reference to *United States v. Carter*, 422 F. Supp. 3d 299 (D.D.C. 2019). *See* Def.'s COA Mot., ECF No. 366 at 27-28. In *Carter*, Judge Ellen Segal Huvelle held that the former residual clause in § 4B1.2 of the previously mandatory Sentencing Guidelines was void for vagueness as applied to Mr. Carter, who was sentenced pursuant to the guidelines before they became advisory under *United States v. Booker*, 543 U.S. 220, 125

S. Ct. 738 (2005). *Carter*, 422 F. Supp. 3d at 317. Mr. Crews calls attention to Judge Huvelle's summary of Justice Sotomayor's concurrence in *Beckles*: "Justice Sotomayor [ ] wrote separately to explain that although she did not agree with the Court's holding that the advisory Guidelines were not subject to vagueness challenges, the majority's analysis at least left open the question whether the residual clause in the mandatory Guidelines was unconstitutionally vague[.]" *Id.* at 303-04; *see* Def.'s COA Mot., ECF No. 366 at 27-28. He argues that this commentary indicates "concern with the broad sweep of *Beckles*," such that "reasonable jurists can differ on this issue of constitutional significance." Def.'s COA Mot., ECF No. 366 at 28.

As the government contends, *see* Gov't's COA Opp'n Mot., ECF No. 369 at 22; Mr. Crews' citation to this portion of Justice Sotomayor's concurrence is misguided, as any reference to open questions regarding the treatment of the residual clause in the previously mandatory Sentencing Guidelines is inapplicable to Mr. Crews, who was sentenced pursuant to the post-*Booker* advisory guidelines regime. In her concurrence, Justice Sotomayor referenced "the formalistic distinction between mandatory and advisory rules" and noted the open question of "whether defendants sentenced in terms of imprisonment before" *Booker* could "mount vagueness attacks on their sentences."

*Beckles*, 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring). Because this question does not apply to Mr. Crews, reasonable jurists would not disagree that the advisory guidelines are not subject to vagueness challenges, *Beckles*, 137 S. Ct. at 890; and that *Johnson*, *Dimaya*, and *Davis* do not affect Mr. Crews' sentence, *see* Mem. Op., ECF No. 360 at 69.

Because Mr. Crews has not made "a substantial showing of the denial of a constitutional right," the Court **DENIES** his motion for a certificate of appealability on his sentencing reconsideration claim. *See* 28 U.S.C. § 2253(c)(2).

## V.   Conclusion

For the foregoing reasons, Mr. Crews' motion for certificate of appealability, ECF No. 366, is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **December 12, 2022**

48